*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

Electronically Filed
Supreme Court
SCAP-21-0000576
08-SEP-2022
08:28 AM
Dkt. 20 OP

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Plaintiff-Appellee,

vs.

RICHARD OBRERO,
Defendant-Appellant.

SCAP-21-0000576

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-21-0000576; CASE NO. 1CPC-19-0001669)

SEPTEMBER 8, 2022

McKENNA, WILSON, AND EDDINS, JJ.; WITH NAKAYAMA, J.,
CONCURRING SEPARATELY AND DISSENTING, WITH WHOM McKENNA, J.,
JOINS AS TO SECTIONS II AND III; AND RECKTENWALD, C.J.,
DISSENTING, WITH WHOM NAKAYAMA, J., JOINS

OPINION OF THE COURT BY EDDINS, J.

## I.    INTRODUCTION

This case is about what limits, if any, Hawai'i Revised

Statutes (HRS) § 801-1 (2014) imposes on the State's ability to

prosecute felonies.  The law says:

> No person shall be subject to be tried and sentenced to be punished in any court, for an alleged offense, unless upon indictment or information, except for offenses within the jurisdiction of a district court or in summary proceedings for contempt.

HRS § 801-1.

Defendant-Appellant Richard Obrero argues the State violated HRS § 801-1 by using the complaint and preliminary hearing process to prosecute him for second-degree murder, attempted murder in the first and second degree, and use of firearm in the commission of a separate felony.

We agree. Obrero isn't charged with contempt. And the felonies he's charged with are neither within the jurisdiction of the district court nor chargeable by information, see HRS §§ 806-82 (2014), 806-83 (Supp. 2021). So Obrero is a person who shall not "be subject to be tried and sentenced . . . in any court, for an alleged offense, unless upon indictment." HRS § 801-1.

We hold that HRS § 801-1 means what it plainly says: criminal defendants cannot be "subject to be tried and sentenced to be punished in any court, for an alleged offense" without an indictment or information unless the charged offense is either contempt or within the jurisdiction of the district court.

We also hold that defendants are "subject to be tried and sentenced to be punished" at arraignment, when they must either plead guilty, and be subject to sentencing, or plead not guilty,

2

and be subject to trial and possibly also sentencing.

## II.  PROCEDURAL BACKGROUND

### A.  Circuit Court Proceedings

On November 12, 2019, the State filed six separate complaints against Obrero, alleging, among other things,[1] that he had committed second-degree murder in violation of HRS §§ 707-701.5 (Supp. 2021) and 706-656.

Two days later, on the morning of November 14, 2019, the State presented its case against Obrero to an Oʻahu Grand Jury.[2] The grand jury returned a no bill.  It did not think there was probable cause to believe Obrero committed any of the charged crimes.  And it voted against allowing the State to subject Obrero to the indignity, expense, and stigma of a criminal prosecution.

The State was undeterred.  On the afternoon of November 14, 2019 – just a few hours after the grand jury returned a no bill – the State made its case again,[3] this time at a preliminary

---

[1]    The State also alleged Obrero had violated HRS § 134-21 (2011) by using a firearm to commit second-degree murder.  And that he'd committed one count of attempted murder in the first degree in violation of HRS §§ 705-500 (2014), 707-701(1)(a) (2014 & Supp. 2021), and 706-656 and three counts of attempted murder in the second degree in violation of HRS §§ 705-500, 707-701.5, and 706-656 (2014).

[2]    The proposed indictment included the six offenses in the complaint as well as three counts of carrying or use of firearm in the commission of a separate felony in violation of HRS § 134-21.

[3]    The State argued that there was probable cause to charge Obrero for the six offenses alleged in the complaint.

hearing before the district court. The hearing was continued to the next day; when it concluded, the district court — unlike the grand jury — found there was probable cause to charge Obrero. It committed Obrero's case to the Circuit Court of the First Circuit.[4]

Obrero pled not guilty at his November 2019 arraignment.

Later, in July 2021, Obrero moved for dismissal of the charges. He argued the State's prosecution of him was unlawful because there was no indictment. He pointed to the plain language of HRS § 801-1:

> No person shall be subject to be tried and sentenced to be punished in any court, for an alleged offense, unless upon indictment or information, except for offenses within the jurisdiction of a district court or in summary proceedings for contempt.

HRS § 801-1.

Obrero argued that his charges weren't for contempt and didn't fall "within the jurisdiction of a district court." He reasoned that since the charges against him can't be charged by information (which is only available for certain Class B and C felonies, see HRS §§ 806-82, 806-83), he is a person who shall not "be subject to be tried and sentenced to be punished in any court, for an alleged offense, unless upon indictment." See HRS § 801-1.

---

[4]    The State consolidated its six previously-filed complaints into a single complaint in the circuit court.

4

The State opposed Obrero's motion.  It urged the court to look beyond the plain text of HRS § 801-1 and interpret the statute through reference to article I, section 10 of the Hawaiʻi Constitution.

Before 1982, the Hawaiʻi Constitution mirrored the federal constitution in requiring grand jury presentments or indictments for felony prosecutions.  In 1982, a constitutional amendment rolled back the constitutional grand jury indictment requirement for felony prosecutions.  Now, article I, section 10 begins: "No person shall be held to answer for a capital or otherwise infamous crime,[5] unless on a presentment or indictment of a grand jury or upon a finding of probable cause after a preliminary hearing held as provided by law or upon information[6] in writing signed by a legal prosecuting officer . . . ." (emphasis added).

The State argued that the 1982 amendment didn't just make it *constitutional* for it to initiate felony prosecutions through the complaint and preliminary hearing process, it also

_____

[5]    Article I, section 10 refers to "infamous crimes," rather than felonies.  We have never considered the meaning of the term "infamous crimes" as used in article I, section 10.  But in Mackin v. United States, 117 U.S. 348, 354 (1886), the United States Supreme Court held that an "infamous crime" in the context of the Fifth Amendment right to a grand jury indictment excluded "misdemeanors not punishable by imprisonment in the penitentiary." And United States v. J. Lindsay Wells Co., 186 F. 248, 250 (W.D. Tenn. 1910) held that an "infamous crime" was one that may lead to the punishment of imprisonment for more than one year, a definition that encompasses all felonies.

[6]    Article I, section 10 was amended again in 2004 to allow for information charging.  See 2004 Haw. Sess. L., at 1085.

effectively nullified HRS § 801-1's grand jury protections by authorizing the State to use complaints and preliminary hearings to initiate felony prosecutions.

The State supported this position with a discussion of Hawaiʻi Rules of Penal Procedure Rules (HRPP) 5(c) and 7(b). The former *explicitly* contemplates preliminary hearings as proceedings that may follow the arrest of defendants charged with felonies. The latter — in direct conflict with HRS § 801-1 — states that a felony may be prosecuted by complaint "if with respect to that felony the district judge has found probable cause at a preliminary hearing and has committed the defendant to answer in the circuit court . . . ." (or if the defendant has properly waived the right to an indictment or preliminary hearing). See HRPP Rule 7(b). The State notes that under HRS § 602-11 the HRPP have the force and effect of law.

The trial court denied Obrero's motion to dismiss. It relied on the *in pari materia* canon of statutory construction, which provides that laws on the same subject matter should be "construed with reference to each other" so that "[w]hat is clear in one statute may be called upon in aid to explain what is doubtful in another." Wells Fargo Bank, N.A. v. Omiya, 142 Hawaiʻi 439, 450, 420 P.3d 370, 381 (2018). The court recognized that HRS § 801-1 "standing alone . . . could lend itself to the interpretation that Mr. Obrero in this case should have been

6

indicted by a grand jury in order for the State to proceed." But, it said, HRS § 801-1 does not stand alone; the statue must be read "in pari materia to other statutes, which the State has pointed out, and other constitutional provisions and other rules that are promulgated by our Supreme Court, which, pursuant to HRS [§] 602-11, do have the force and effect of law." The court concluded that when HRS § 801-1 was read *in pari materia* with the authorities identified by the State, it did not preclude the State from using the complaint and preliminary hearing process to prosecute Obrero.

## B.  Proceedings on Appeal

Obrero took an interlocutory appeal to the ICA. He then applied for, and received, transfer to this court.

On appeal, Obrero contends that the circuit court erred by applying the *in pari materia* canon of statutory interpretation.[7] That canon, he contends, applies only where there is something doubtful or ambiguous about a statute. Since HRS § 801-1 is clear on its face, the application of the *in pari materia* canon in this case doesn't resolve ambiguity, it creates it.

---

[7]     On appeal, Obrero also argues that the charges against him should be dismissed <u>with</u> prejudice in order to prevent the possibility of a future putative due process injury. Obrero does not claim that his due process rights have been violated and has not shown an imminent "distinct and palpable" possibility that they will be violated. <u>See</u> <u>Kahoʻohanohano v.</u> <u>State</u>, 114 Hawaiʻi 302, 318, 162 P.3d 696, 712 (2007). For these reasons, we decline to address Obrero's due process contentions.

7

The State counters that it is a "fundamental tenet" of statutory interpretation that "laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." The State observes that article I, section 10, HRS §§ 805-7 and 806-8, as well as HRPP Rules 5 and 7, all relate to the same topic as HRS § 801-1: the methods by which a criminal prosecution may be initiated. So, it reasons, HRS § 801-1's meaning should be triangulated through reference to those other authorities.

The State points out that in 1991 the legislature amended HRS §§ 806-6, -7, and -8 to add "complaint" to the disjunctive series "information, complaint, or an indictment" and said the amendment's purpose was "to include complaints as a means of commencing a criminal prosecution." See HRS §§ 806-6 (2014), -7 (2014), and -8 (2014). The legislature described the amendment as a "'housekeeping measure' to conform certain provisions of the [HRS] to what is currently practiced under the [HRPP]." House Standing Committee Report Number 1652, in 1991 House Journal, at 1437. The State says we should interpret HRS § 801-1 in light of this legislative history.

On appeal, the State also argues that HRS § 801-1 was repealed by implication.  It points to HRS §§ 602-11,[8] 805-7,[9] and 806-8,[10] and HRPP Rules 5 and 7 and argues they "cover the field regulating the process, practices, and procedure that authorize a person to be held to answer for felony offenses upon a finding of probable cause after a preliminary hearing" and that HRS § 801-1, therefore, "seems to have been, in part, impliedly repealed or amended" such that it cannot be interpreted as Obrero contends.

Obrero rejects the State's repeal-by-implication argument. Citing State v. Casugay-Badiang, 130 Hawaiʻi 21, 305 P.3d 437

---

[8]  See HRS § 602-11 (2016) ("The supreme court shall have power to promulgate rules in all civil and criminal cases for all courts relating to process, practices, procedure and appeals, which shall have the force and effect of law.  Such rules shall not abridge, enlarge, or modify the substantive rights of any litigant, nor the jurisdiction of any of the courts, nor affect any statute of limitations.").

[9]  See HRS § 805-7 ("In all cases of arrest for offenses that must be tried in the first instance before a jury, or that can be tried only on indictment by a grand jury, the judge in whose jurisdiction or on whose warrant the accused was arrested, upon the appearance of the accused, shall proceed to consider whether there is probable cause to believe that the accused is guilty of the offense with which the accused is charged.").

[10]  HRS § 806-8 says:

> In criminal cases brought in the first instance in a court of record, but in which the accused may be held to answer without an indictment by a grand jury, the legal prosecutor may arraign and prosecute the accused upon an information, complaint, or an indictment at the prosecutor's election; and in all criminal cases brought in the first instance in a court of record the prosecutor may arraign and prosecute the accused by information, complaint, or indictment, as the case may be, whether there has been a previous examination, or commitment for trial by a judge, or not.

HRS § 806-8.

9

(2013), he argues that for a statute to be repealed by implication it must be "'plainly irreconcilable' with some other statute or constitutional provision." Id. at 29, 305 P.3d at 445. Obrero says the State has not shown that "effect can[not] reasonably be given" to both HRS § 801-1 and the constitutional and statutory provisions the State contends implicitly repeal HRS § 801-1.

## III. DISCUSSION

HRS § 801-1 plainly states that the State must secure an indictment to subject Obrero to trial and sentencing.[11] We agree with Obrero that we cannot undo this unambiguous statutory requirement with an *in pari materia* analysis: the *in pari materia* canon is used to resolve statutory ambiguity, not create it.

The only ambiguity in HRS § 801-1 is found in the phrase "subject to trial and sentencing." At what point does a criminal defendant become subject to trial and sentencing? We hold that a defendant is subject to trial and sentencing at arraignment, when they must either plead guilty (and face

---

[11] We review the court's interpretation of HRS § 801-1 *de novo*. See Gray v. Admin. Dir. of the Court, 84 Hawaiʻi 138, 144, 931 P.2d 580, 586 (1997) ("The interpretation of a statute is a question of law reviewable *de novo*." (Cleaned up.)). However, had Obrero challenged the State's failure to comply with HRS § 801-1 for the first time on appeal, we would presume the validity of the complaint against him and would not reverse his conviction absent a showing that the complaint prejudiced him or could not be construed to charge a crime. See State v. Wheeler, 121 Hawaiʻi 383, 399, 219 P.3d 1170, 1186 (2009).

10

sentencing) or plead not guilty (and face trial and potentially also sentencing).

In addition to holding that HRS § 801-1 means what it plainly says, we also hold that the statute has not been implicitly repealed. HRS § 801-1 is still good law. And the State's prosecution of Obrero is unlawful because it has not complied with the statute's indictment requirement.[12]

---

[12]  The unlawfulness of the State's prosecution did not deprive the circuit court of subject-matter jurisdiction. Article VI, section 1 of Hawaiʻi's constitution gives the courts "original and appellate jurisdiction as provided by law." And under HRS § 603-21.5(a)(1), the circuit courts have jurisdiction over "[c]riminal offenses cognizable under the laws of the State, committed within their respective circuits or transferred to them for trial by change of venue from some other circuit court." HRS § 603-21.5(a)(1) (2016 & Supp. 2021). "Cognizable means 'capable of being known or recognized,' or 'capable of being judicially tried or examined before a designated tribunal; within the court's jurisdiction.'" Schwartz v. State, 136 Hawaiʻi 258, 264, 361 P.3d 1161, 1167 (2015) (cleaned up) (quoting Black's Law Dictionary 316 (10th ed. 2014)).

In Schwartz, we held that a complaint properly invoked the subject-matter jurisdiction of the District Court of the Second Circuit even though it failed to allege an element of the crime it charged. We explained that the statutory requirements for the district court's jurisdiction (found in HRS §§ 604-8 (2016 & Supp. 2021) and 604-11.5 (2016)) were met because the charging document alleged the defendant committed a "'known' and recognized" statutory offense "punishable by a fine and by imprisonment not exceeding one year," "in Lāhainā, which is within the Second Circuit." Id. at 264, 361 P.3d at 1167. Here, a similar analysis informs our conclusion that the State's complaint properly invoked the circuit court's subject-matter jurisdiction. The complaint alleged Obrero violated HRS §§ 705-500, 707-701(1)(a), 706-656, 707-701.5, and 134-21, all of which are recognized offenses under the laws of our State. It also alleged Obrero committed these offenses "in the City and County of Honolulu," which is in the First Circuit. By charging Obrero with committing "[c]riminal offenses cognizable under the laws of the State, committed within [the First Circuit]," the complaint satisfied HRS § 603-21.5(a)(1)'s requirements for invoking the Circuit Court of the First Circuit's subject-matter jurisdiction.

11

**A.    The *in pari materia* canon is inapplicable because HRS § 801-1 is plain on its face: the State needs an indictment to subject Obrero to trial and sentencing**

The plain language of HRS § 801-1 leaves little room for confusion or doubt about what the State must do if it wants to subject Obrero to trial and sentencing: the statute says that if the State wants to subject a criminal defendant to trial and sentencing for alleged offenses *other than* contempt or those in the jurisdiction of the district court, it must have an indictment or information.

The State has not advanced any "reasonable, competing interpretations" of what's required by the statute.  There is therefore no ambiguity about what HRS § 801-1 requires the State to do before it may "subject Obrero to trial and sentencing." See United States v. Acosta, 363 F.3d 1141, 1155 (11th Cir. 2004) ("[T]he existence of two reasonable, competing interpretations is the very definition of ambiguity." (internal quotation marks omitted)).

The *in pari materia* canon of statutory interpretation is a useful tool for interpreting ambiguous or doubtful statutes. But it should not be used to muddle the meaning of unequivocal, but inconvenient, black letter law.  Our rule is "What is clear in one statute may be called upon in aid to explain what is doubtful in another."  Wells Fargo Bank, 142 Hawaiʻi at 450, 420 P.3d at 381 (emphasis added).  It is not: "What is clear in one

12

statute may be called upon to create doubt in another." As the Supreme Court explained in Barnes v. Philadelphia & R.R. Co., 84 U.S. 294 (1872):

> Where a section or clause of a statute is ambiguous, much aid, it is admitted, may be derived in ascertaining its meaning by comparing the section or clause in question with prior statutes *in pari materiâ*, but it cannot be admitted that such a resort is a proper one where the language employed by the legislature is plain and free of all uncertainty, as the true rule in such a case is to hold that the statute speaks its own construction.

Id. at 302. See also United States v. Broncheau, 645 F.3d 676, 685 (4th Cir. 2011) ("The principle of in pari materia is applicable . . . only where the meaning of a statute is ambiguous or doubtful." (cleaned up)); State ex rel. Clay v. Cuyahoga Cty. Med. Exam'r's Office, 94 N.E.3d 498, 503 (Ohio 2017) (explaining that the *in pari materia* canon was not applicable where the court could not "after reading the statute and giving the words the legislature chose their plain and ordinary meanings, find that the words of the statute are ambiguous").

HRS § 801-1 "speaks its own construction." And because it is unambiguous on its face about what the State must do before it may subject a defendant to trial and sentencing, we cannot use an *in pari materia* reading to nullify its plain meaning.

**B. A defendant becomes subject to trial and sentencing at arraignment**

To the extent that there is any ambiguity to be found in HRS § 801-1, it is in the phrase "subject to trial and sentencing." "Subject to trial and sentencing" could mean the start of trial. But it could also mean some earlier point in the criminal prosecution where the specters of adjudication and possibly punishment are concrete enough that the defendant is "subject to" them.

We hold that defendants are subject to "be tried and sentenced to be punished" at arraignment. There is no way for a defendant to leave an arraignment without being "subject to be tried" (if the defendant has pled not guilty) or "subject to be sentenced to be punished" (if the defendant has pled guilty). Cf. State v. Hernandez, 143 Hawaiʻi 501, 513, 431 P.3d 1274, 1286 (2018) (recognizing that "a guilty plea in itself is a conviction" (cleaned up)). By demanding a plea of either "guilty" or "not guilty," the law subjects defendants to be either tried or sentenced at arraignment. So under HRS § 801-1, the State may initiate a felony prosecution via complaint, but it should secure an indictment or information (if applicable)

14

before arraignment.[13],[14]

**C.  HRS § 801-1 has not been repealed by implication**

There are only two ways that a law may repeal an earlier statute "by implication."  The first is if the two laws are plainly irreconcilable; the second is "if the later act covers the whole subject of the earlier one and is clearly intended as a substitute."  See Gardens at W. Maui Vacation Club v. Cty. of Maui, 90 Hawai'i 334, 341, 978 P.2d 772, 779 (1999) (cleaned up); see also Fasi v. City & Cty. of Honolulu, 50 Haw. 277, 285, 439 P.2d 206, 211 (1968) (explaining that repeal by implication occurs when a latter act "is exclusive, that is, when it covers the whole subject to which it relates, and is manifestly designed by the legislature to embrace the entire law on the subject" (emphasis added)).  We have never recognized implicit repeal by implication absent direct conflict between statutes or

---

[13]  Federal cases concerning the use of informations to initiate federal felony prosecutions provide support for this approach.  Unlike article I, section 10, the Fifth Amendment prohibits holding defendants to answer without a grand jury indictment.  But several courts have held that the government may still initiate federal prosecutions — and satisfy statutes of limitations — with an information; the Fifth Amendment just means that there needs to be a grand jury indictment before the defendant can be required to plead or be subjected to trial.  See United States v. Burdix-Dana, 149 F.3d 741, 742 (7th Cir. 1998) (recognizing that "absence of a valid waiver of prosecution by indictment bars the acceptance of a guilty plea or a trial on the relevant charges" but also holding that filing of information satisfies statute of limitations even where indictment is necessary for further prosecution); United States v. Rothenberg, 554 F.Supp.3d 1039, 1041 (N.D. Cal. 2021) (concluding that information "tolled the statute of limitations" even though defendant had not waived right to grand jury indictment).

[14]  HRS § 806-7 also dictates that "[e]very indictment shall be duly found by a grand jury before the arraignment of the accused."  HRS § 806-7 (emphasis added).

15

evidence that a statute is "manifestly designed" to "cover the field" and displace all other law on a subject.

Repeal by implication is disfavored. Gardens at W. Maui Vacation Club, 90 Hawaiʻi at 340, 978 P.2d at 778.[15]  And "if effect can reasonably be given to two statutes, it is proper to presume that the earlier statute is intended to remain in force and that the later statute did not repeal it." State v. Pacariem, 67 Haw. 46, 47, 677 P.2d 463, 465 (1984).

Here, the State has not shown that article I, section 10 or any of the other authorities it cites are either "plainly irreconcilable" with HRS § 801-1 or manifestly designed by the legislature to "cover the field" and embrace the entire law on the initiation of felony prosecutions.

The State is right that HRPP Rules 5 and 7 — which authorize the use of the complaint-and-preliminary-hearing process to initiate felony prosecutions — flatly contradict HRS § 801-1.  But these are *rules* made by the Supreme Court, not laws enacted by the legislature.  These rules may have the force of law, but they may never "abridge, enlarge, or modify the substantive rights of any litigant."  HRS § 602-11.  As we explained in Cox v. Cox, "[w]here a court-made rule affecting

---

[15]    See also Mahiai v. Suwa, 69 Haw. 349, 357, 742 P.2d 359, 366 (1987) ("[R]epeal by implication is disfavored."); Furukawa v. Honolulu Zoological Soc'y, 85 Hawaiʻi 7, 19, 936 P.2d 643, 655 (1997) ("Repeals by implication are disfavored.").

16

litigants' substantive rights contravenes the dictates of a parallel statute, the rule must give way."  138 Hawai'i 476, 482, 382 P.3d 288, 294 (2016).[16,17]

None of the constitutional or statutory authorities the State cites directly conflict with HRS § 801-1.  Not article I,

---

[16]     See also Hernandez, 143 Hawai'i at 510 n.14, 431 P.3d at 1283 n.14 ("It is self-evident that while a court rule may provide an exception to another court rule, this exception would have no effect upon [a] statutory or constitutional right . . . .").

[17]     Caselaw interpreting HRS § 602-11 makes clear that a right need not come from the constitution to be "substantive."  See In re Doe Children, 94 Hawai'i 485, 487, 17 P.3d 217, 219 (2001) (holding that statute setting filing deadlines conferred substantive right); Cox v. Cox, 138 Hawai'i 476, 481, 382 P.3d 288, 293 (2016) (holding that statute directing the family court to consider certain factors in awarding attorney fees conferred substantive right).  HRS § 801-1 confers a substantive right in being tried only upon a determination of probable cause from a group of ordinary citizens who are "at arm's length" from the judiciary and can serve as a "buffer or referee between the Government and the people."  See United States v. Williams, 504 U.S. 36, 47 (1992).

section 10 as amended in 1982.[18]  Not HRS § 805-7[19] (last amended in 1998).  Not HRS § 806-6 or -8 (last amended in 1991).[20]  In fact, HRS §§ 805-7, and 806-8 refer to cases that "can be tried

---

[18]     Article I, section 10 places *limits* on the government's power to subject a criminal defendant to the stigma, uncertainty, and expense of criminal prosecution.  Cf. Monongahela Navigation Co. v. U.S., 148 U.S. 312, 325 (1893) (describing the Fifth Amendment as "a series of negations, denials of right or power in the government").  Because of article I, section 10, the government could not, for example, force someone to plead "guilty" or "not guilty" to criminal charges based on the results of a social media poll.  But the section does not limit the legislature's ability to place checks on the government's power to prosecute beyond those imposed by the constitution.  Cf. State v. Maldonado, 108 Hawai'i 436, 444, 121 P.3d 901, 909 (2005) ("[W]here the legislature has enacted a valid statute that provides greater protection than the constitution, conformance to the statutory mandate, and not the lower reasonableness standard set forth by the state or federal constitution, is required.").  HRS § 801-1 places restrictions on the government's power to prosecute beyond those found in the constitution.  But that does not mean it "conflicts" with the constitution.  The legislature is free to augment or duplicate the rights afforded by the constitution with statutory entitlements.  And it has done just that with HRS § 801-1.  The statute reflects clear legislative intent that — in addition to whatever constitutional rights they may have under article I, section 10 — certain defendants also have a discrete statutory entitlement to face trial and sentencing only upon an indictment.

[19]     HRS § 805-7 identifies the circumstances in which a district court must hold probable cause hearings, but nothing in the statute suggests that the State may try and sentence a defendant based solely on a district court's probable cause determination.  To the contrary, the statute explicitly recognizes that there are certain crimes that "can be tried only on indictment by a grand jury":

> In all cases of arrest for offenses that must be tried in the first instance before a jury, or that can be tried only on indictment by a grand jury, the judge in whose jurisdiction or on whose warrant the accused was arrested, upon the appearance of the accused, shall proceed to consider whether there is probable cause to believe that the accused is guilty of the offense with which the accused is charged.

HRS § 805-7 (emphasis added).

[20]     The HRPP recognize that felonies may be charged with complaints where the defendant has waived the right to an indictment.  See, e.g. HRPP Rule 7(b)(3).  The references in HRS §§ 806- 6, -7, and -8 to the charging of felonies by complaint do not conflict with HRS § 801-1 when they are read as referring to felonies charged by complaint pursuant to HRPP Rule 7(b)(3).

18

only on indictment by a grand jury" (HRS § 805-7) or "in which the accused may be held to answer without an indictment by a grand jury" (HRS § 806-8). HRS § 806-8 is even titled "[p]rosecution where indictment not essential." The State does not explain how a statute with a title that contemplates the possibility that indictments are, in some circumstances, essential for prosecution could directly conflict with a statute providing that indictments are, in some circumstances, essential for prosecution.

The State's claim that article I, section 10, HRS § 805-7, or HRS § 806-6 or -8 implicitly repeal HRS § 801-1 by "covering the field" is similarly without merit.

Article I, section 10 cannot "cover the field" because it is manifestly not intended to embrace the entire law on the initiation of criminal prosecutions in our state. It is a single sentence. It establishes a constitutional floor for prosecutions, and "indicates" the general principle that defendants should not be prosecuted without a probable cause determination from an independent factfinder; but it does not "lay[] down rules by means of which those principles may be given the force of law." See DW Aina Le'a Dev., LLC v. State Land Use Comm'n, 148 Hawai'i 396, 403, 477 P.3d 836, 843 (2020).

A single sentence is no substitute for the tangle of laws that came before it concerning the initiation of felony

19

prosecutions.  The 1982 amendment of article I, section 10, then, made the repeal of HRS § 801-1 possible, but did not effectuate that repeal by "covering the field" and providing a comprehensive new procedural framework for charging felonies through the complaint and preliminary hearing process.

None of the other one-off statutes the State cites as "implicitly repealing" HRS § 801-1 constitute such a framework either.  These are standalone statutes that deal with piecemeal aspects of prosecution.  They concern "Commitment; form of mittimus" (HRS § 805-7's title) and oblige the State to furnish defendants with a copy of a complaint or indictment before arraignment (HRS § 806-6).  They do not embrace the entire law on the initiation of a felony prosecution.

HRS § 801-1's history can be traced to 1869, when the Kingdom of Hawaiʻi adopted a law requiring grand jury indictments for most prosecutions.[21]  And America's "[f]ounders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by a presentment or indictment of a Grand

---

[21]    The 1869 version of this law enacted in the Hawaiian Kingdom's penal code was nearly identical to HRS § 801-1: it exempted offenses within the jurisdiction of a "police court or district justice" from the indictment requirement whereas HRS § 801-1 exempts offenses within the "jurisdiction of a district court."  Haw. Kingdom Penal Code 1869, Chapter 2 § 2.

20

Jury." United States v. Calandra, 414 U.S. 338, 343 (1974) (cleaned up)).

The grand jury "infuses our system of justice with a democratic ethos because ordinary citizens serve as grand jurors." State v. Vega-Larregui, 248 A.3d 1224, 1239 (N.J. 2021) (cleaned up)). It "functions as a barrier to reckless or unfounded charges." State v. Kahlbaun, 64 Haw. 197, 203, 638 P.2d 309, 315 (1981). And it serves as a "shield against arbitrary or oppressive action" by ensuring "that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance." Id. (quoting United States v. Mandujano, 425 U.S. 564, 571 (1976)). Put plainly, HRS § 801-1 guarantees that the State may only prosecute someone for one of Hawaiʻi's most serious offenses if it has an indictment from "ordinary citizens" and not just a determination of probable cause from a single judge.

If the Legislature wants to strip people of the grand jury protections afforded by HRS § 801-1, it is free to do so. It may expressly repeal HRS § 801-1. It may pass a law in direct conflict with HRS § 801-1. It may develop a new comprehensive statutory framework controlling initiation of felony prosecutions and indicate that its framework applies "any law to the contrary notwithstanding." See Fasi, 50 Haw. at 285, 439

21

P.2d at 211 (holding that statute which used the introductory clause "[a]ny law to the contrary notwithstanding" was "manifest[ly]" designed to "cover the entire field" on its topic.) But it cannot undo the substantive right to a grand jury indictment conferred by HRS § 801-1 with a "housekeeping measure" that sprinkles the word "complaint" throughout a few statutes.[22]

## D. The State's prosecution of Obrero is unlawful under HRS § 801-1

The felonies Obrero is charged with are not within the jurisdiction of the district court and may not be charged by information. So under HRS § 801-1, Obrero cannot be arraigned on the charges absent a grand jury indictment. Because the State's prosecution of Obrero proceeded beyond arraignment based on a complaint and probable cause hearing alone, it is unlawful under HRS § 801-1. The charges against Obrero should be dismissed without prejudice.[23]

---

[22] Especially not where, as discussed above, those statutes explicitly contemplate that some cases may only be tried on an indictment. See, e.g., HRS § 806-8 (referring to cases "in which the accused may be held to answer without an indictment by a grand jury").

[23] This conclusion is justified for the reasons set forth in this opinion. But it is hardly the only conclusion that a competent lawyer could arrive at after reading HRS § 801-1 and considering other related authorities concerning the initiation of felony prosecutions. Some of the sharpest legal minds disagree with our holding in this case. See dissent. So our conclusion that the plain language of HRS § 801-1 obliged the State to secure an indictment before subjecting Obrero to trial and sentencing does not mean that a defense lawyer who declined to move for the dismissal of charges for failure to comply with HRS § 801-1 fell below the "range of competence demanded of attorneys in criminal cases." See State v. Salavea, 147 Hawaiʻi 564, 576, 465 P.3d 1011, 1023 (2020).

## IV.  CONCLUSION

The State cannot subject Obrero to trial and sentencing without a grand jury indictment.  See HRS § 801-1.

We reverse the circuit court's denial of Obrero's motion to dismiss and remand this case to the circuit court for proceedings consistent with this opinion.

Thomas M. Otake
for appellant

Donn Fudo
for appellee

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins



23