**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000395
28-FEB-2023
11:39 AM
Dkt. 91 MO**

NO. CAAP-21-0000395


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
ROMMEL L. BAUTISTA, Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-20-0000366)


MEMORANDUM OPINION
(By:  Leonard, Presiding Judge, Wadsworth and McCullen, JJ.)

Defendant-Appellant Rommel L. Bautista (**Bautista**)
appeals from the Circuit Court of the Second Circuit's March 10,
2021 Judgment; Conviction and Sentence; Notice of Entry.[1]
Following a no-contest plea, Bautista was convicted of
(1) Assault in the Second Degree, in violation of Hawaii Revised
Statutes (**HRS**) § 707-711(1)(a) (Supp. 2018); (2) Terroristic
Threatening in the First Degree, in violation of HRS § 707-

---

[1]  The Honorable Rhonda I.L. Loo presided.

716(1)(e) (2014); and (3) Felony Abuse of Family or Household Member, in violation of HRS § 709-906(1) and (9) (Supp. 2019).

The circuit court sentenced Bautista to a five-year term of imprisonment for each count, to be served consecutively. On appeal, Bautista challenges the circuit court's jurisdiction, the lawfulness of the prosecution, and the consecutive nature of his sentence. For the reasons discussed below, we affirm.

## I. Background

### A. Complaint And Committal

On July 27, 2020, the State filed a complaint in the District Court of the Second Circuit, charging Bautista with seven felony offenses and alleging that all offenses occurred in the County of Maui, State of Hawai'i.[2] Finding probable cause,

---

[2] The Honorable Blaine J. Kobayashi, and the Honorable Kirstin M. Hamman presided over the district court proceedings.

The seven charged counts were as follows:

**Count 1:** Attempted Murder in the Second Degree, in violation of HRS §§ 705-500(2) (2014) and 707-701.5 (2014 and Supp. 2018), and subject to HRS § 706-656 (2014);

**Count 2:** Assault in the First Degree, in violation of HRS § 707-710(1) (2014);

**Count 3:** Assault in the Second Degree, in violation of HRS § 707-711(1)(a);

**Count 4:** Terroristic Threatening in the First Degree, in violation of HRS § 707-716(1)(e);

**Count 5:** Felony Abuse of Family or Household Member, by strangulation, in violation of HRS §§ 709-906(1) and/or (8) (Supp. 2019);

**Count 6:** Felony Abuse of Family or Household Member, by strangulation, in violation of HRS §§ 709-906(1) and/or (8); and

**Count 7:** Felony Abuse of Family or Household Member, in the presence of a minor, in violation of HRS §§ 709-906(1) and/or (9).

2

the district court committed the case to the circuit court and a hearing was scheduled in circuit court for August 12, 2020 at 8:00 a.m. in Courtroom #4. A case was then initiated in circuit court based on that committal.

**B.     No-Contest Plea**

About five months later, Bautista pled no contest to Assault in the Second Degree (Count 3), Terroristic Threatening in the First Degree (Count 4), and Felony Abuse of Family or Household Member, minor present (Count 7) in exchange for dismissing the remaining charges of Attempted Murder in the Second Degree (Count 1), Assault in the First Degree (Count 2), and Felony Abuse of a Family or Household Member, by strangulation (Counts 5 and 6). On the no-contest plea form, Bautista acknowledged that he was giving "up the right to appeal anything that has happened in this case to date" and that the circuit court may impose consecutive terms of imprisonment.

During the hearing on Bautista's no-contest plea, the circuit court reiterated that "the maximum penalty provided by law for these offenses is fifteen years in prison and a $30,000 fine[,]" and Bautista acknowledged his understanding. The circuit court again explained, "So when I mentioned fifteen years earlier, that's if I ran everything consecutively, one after the other. . . . I got that by adding five plus five plus five . . . ." Bautista then requested a continuance to speak with his family, and the circuit court granted the request.

The next week, the circuit court again reviewed the no-contest plea with Bautista and explained that "the maximum penalty provided by law for these offenses is a fifteen-year prison term and a $30,000 fine[,]" and Bautista acknowledged that he understood. Later in the hearing, the circuit court reiterated that it "could sentence [him] to the full fifteen-year prison term[,]" and Bautista acknowledged his understanding.

After the circuit court's colloquy, Bautista pled no-contest. The circuit court accepted Bautista's plea and ordered a presentence report, which was filed with the circuit court.

## C.   Sentencing

### 1.   State's Argument

During the sentencing hearing, the State requested consecutive sentencing based on the circumstances of the incident. The State explained that Bautista attacked his wife (**Wife**) because he thought she was having affairs and would not admit it. Bautista "slapped her face, and then grabbed her throat, impeding her breathing. He also then kicked her in the ribs and body and stomped on her chest . . . ." He told her he was going to kill her, and "grabbed the ceramic toilet tank cover and made a motion like he was going to hit her." When Bautista's father banged on the door, Wife seized "the chance to grab her six-year-old son and leave the house and call a friend

for help."  The friend took them to the police station where she was checked by medics and transferred to the emergency room.

Wife had redness and abrasions on her nose, left cheek, ear, chest, and back "as well as a lump on the back of her head and redness on both sides of her neck."  Wife also had bruises on her scalp behind her left ear, and on her upper arms and lower legs.  She was "also diagnosed with a fracture of her right second, third, and fourth ribs as well as a collapsed lung."

The State acknowledged that Bautista's "family appears to have forgiven him" and "would like to see him return home."  The State, however, noted that Bautista's six-year-old son was present during the incident, and "told the police he saw his father punch his mother, [and] grab her neck . . . ."  The State requested that the circuit court sentence Bautista to five years imprisonment for each offense, to be served consecutively.

### 2. Defense's Argument

Defense counsel confirmed that they reviewed the presentence report, and nothing needed to be corrected.  Defense counsel explained that it was Wife that "woke him from a sleep and was yelling at him, and that's what started it."  Defense counsel asked the court to take into account Wife's plea for leniency and that he never hit her before.  Defense counsel explained that Bautista "did not intend to end her life[,]" but "was trying to force a confession out of her as to what he

5

believed to be infidelity and threatened her with the intent to make her believe that he might kill her, do her serious harm in order to get her to confess."

### 3.    Circuit Court's Decision

After expressing concern for Bautista's son and the effects this incident may have on him later, the circuit court stated that "there was no part of your wife's body that was not untouched."  The circuit court recognized that "the doctor at the hospital did confirm the extent of her injuries with the facial bruising, the collapsed lung, which could have caused death, fracture to not one rib but three different ribs . . . ."

"I think the only reason you stopped was perhaps because your father was pounding on the front door . . . and this gave an opportunity for your wife to get out of the house with the six-year-old, your son . . . ."

The circuit court explained that it "had an opportunity today to review the options of sentencing" and could possibly give probation or concurrent sentences.  The circuit court confirmed that it heard the arguments and Bautista's statement, read the letters submitted by his family and Wife, and considered that Bautista had no previous record.

Nonetheless, the circuit court stated that "this is a very severe case. . . . And the nature of these -- of these charges, though it's come off the attempted murder, are extremely serious . . . ."  Additionally, the circuit court

stated, "your adult daughter talks about how you folks would argue almost every night, and it was so bad that she didn't even want to live at home at one point."

Wife "needs to be protected. Your son needs to be protected. The community needs to be protected from his kind of behavior." The circuit court sentenced Bautista to a five-year term of imprisonment for each of the three convicted offenses, to be served consecutively. Bautista filed an untimely notice of appeal.[3] See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 4(b) (providing that in a criminal case "the notice of appeal shall be filed within 30 days after entry of judgment or order appealed from").

## II. STANDARD OF REVIEW

### A. Jurisdiction

"[T]he court's jurisdiction to consider matters brought before it is a question of law which is subject to *de novo* review on appeal applying the 'right/wrong' standard." State v. Lorenzo, 77 Hawaiʻi 219, 220, 883 P.2d 641, 642 (App. 1994) (citations omitted).

---

[3] In criminal cases, this court has made exceptions to the requirement that the notice of appeal be timely filed where "defense counsel has inexcusably or ineffectively failed to pursue a defendant's appeal from a criminal conviction in the first instance[.]" State v. Irvine, 88 Hawaiʻi 404, 407, 967 P.2d 236, 239 (1998); State v. Chavira, 120 Hawaiʻi 255, 203 P.3d 675, No. 29082, 2009 WL 458772 at *1 (App. Feb. 25, 2009) (SDO). It appears that Bautista's former counsel failed to file a timely notice of appeal.

**B.    Sufficiency Of The Charge**

"Whether a charge sets forth all the essential elements of a charged offense is a question of law, which we review under the de novo, or right/wrong, standard." State v. Wheeler, 121 Hawaiʻi 383, 390, 219 P.3d 1170, 1177 (2009) (cleaned up).

**C.    Sentencing**

Sentencing matters are reviewed for an abuse of discretion.  State v. Mundon, 121 Hawaiʻi 339, 349, 219 P.3d 1126, 1136 (2009) (quoting State v. Kahapea, 111 Hawaiʻi 267, 278, 141 P.3d 440, 451 (2006)).

### III. Discussion

In his opening brief, Bautista challenged the consecutive nature of his sentence.  But, after being granted leave to amend his opening brief, Bautista additionally challenged the circuit court's subject matter jurisdiction.

Bautista then submitted an HRAP Rule 28(j) letter to this court citing to the Hawaiʻi Supreme Court's opinion in State v. Obrero, 151 Hawaiʻi 472, 517 P.3d 755 (2022), and this court ordered the parties to submit supplemental briefing addressing the effect Obrero has on this case.  In his supplemental brief, Bautista asserts that his conviction is unlawful in light of Obrero.

8

Bautista applied to have this case transferred to the Hawai'i Supreme Court, but that application was rejected. Of the three points of error he raises throughout these proceedings, we address Bautista's challenge to the circuit court's jurisdiction first.

## A.    The Circuit Court Had Jurisdiction

Bautista contends that the circuit court had no jurisdiction over his case because the State did not file a complaint in the circuit court. To support this contention, Bautista asserts that once the district court committed the case to circuit court, the State "had to take an active role in initiating the proceedings in circuit court by filing a charging document. Its failure to do that means that the circuit court's subject matter jurisdiction never attached." In his supplemental brief, Bautista acknowledges Footnote 12 in Obrero, but reiterates that the State "needed to file a 'cognizable' charging instrument in the circuit court. Without it, the circuit court lacked jurisdiction to convict and sentence" him.

"Jurisdiction is defined as 'the power and authority on the part of the court to hear and judicially determine and dispose of the cause pending before it.'" Schwartz v. State, 136 Hawai'i 258, 262, 361 P.3d 1161, 1165 (2015) (quoting State v. Villados, 55 Haw. 394, 396, 520 P.2d 427, 430 (1974)). "'[J]urisdiction depends upon the state of affairs existing at

9

the time it is invoked; once having attached, it . . . is retained by a court until fully exhausted by the entry of a final judgment.'  It is not lost by subsequent events, . . . unless a statute provides otherwise."  136 Hawai'i at 262, 361 P.3d at 1165 (citation omitted).

###### 1.   **Obrero, HRS, and HRPP**

In Obrero, the Hawai'i Supreme Court held that the State's prosecution of the defendant by complaint instead of indictment violated HRS § 801-1 (2014).  Obrero, 151 Hawai'i at 475, 482, 517 P.3d at 758, 765.  Nevertheless, in Footnote 12, the supreme court explained that "[t]he unlawfulness of the State's prosecution did not deprive the circuit court of subject-matter jurisdiction."  151 Hawai'i at 478 n.12, 517 P.3d at 761 n.12.

The supreme court explained that the State filed six separate complaints in the district court.  151 Hawai'i at 475, 517 P.3d at 758.  But after the district court found probable cause and committed the case to circuit court, the State consolidated the six complaints into a single complaint, and filed that complaint in the circuit court.  151 Hawai'i at 476, 476 n.4, 517 P.3d at 759, 759 n.4.

Quoting HRS § 603-21.5(a)(1) (2016), the supreme court explained that "the circuit courts have jurisdiction over 'criminal offenses cognizable under the laws of the State,

10

committed within their respective circuits or transferred to them for trial by change of venue from some other circuit court.'" 151 Hawaiʻi at 478 n.12, 517 P.3d at 761 n.12 (citation and brackets omitted). Cognizable was defined as "capable of being known or recognized, or capable of being judicially tried or examined before a designated tribunal; within the court's jurisdiction." Id. (citation and internal quotation marks omitted).

The supreme court then concluded that "the State's complaint properly invoked the circuit court's subject matter jurisdiction" because it alleged offenses recognized under our State laws and these offenses were committed in the City and County of Honolulu. Id.

HRS chapter 805 governs criminal procedure in the district courts. "When a complaint is made to any prosecuting officer of the commission of any offense, the prosecuting officer shall examine the complaint, shall reduce the substance of the complaint to writing . . . ." HRS § 805-1 (2014). "In all cases of arrest for offenses that must be tried in the first instance before a jury, or that can be tried only on indictment by a grand jury," the judge, "upon the appearance of the accused, shall proceed to consider whether there is probable cause to believe that the accused is guilty of the offense with which the accused is charged." HRS § 805-7 (2014).

11

"[I]f in the judge's opinion there is probable cause to believe that the accused is guilty of the offense" the accused is charged with, "the judge shall make out and deliver to a police officer a mittimus which may be in the form established by the usage and practice of the issuing court." HRS § 805-7. "In all criminal cases had before a district judge where there has been a commitment as provided in section 805-7, . . . the judge, forthwith, shall send to the county attorney or prosecuting attorney . . . giving the name of the defendant and the date the records were sent to the circuit court . . . ." HRS § 805-8 (2014).

HRS chapter 806 governs criminal procedure in circuit court, but contains no requirement to refile a complaint following a commitment from district court. Offering some guidance, the Hawaiʻi Rules of Penal Procedure (**HRPP**) provide the procedure for committing a case to the circuit court.[4] "If the defendant is held to answer in the circuit court, <u>the court shall transmit to the circuit court all papers and articles received in evidence at the preliminary hearing and any bail received by it</u>." HRPP Rule 5(c)(6) (emphasis added). "Within 7

---

[4] In <u>Obrero</u>, the supreme court explained that HRPP Rules 5 and 7 "flatly contradict HRS § 801-1" and "[w]here a court-made rule affecting litigants' substantive rights contravenes the dictates of a parallel statute, the rule must give way." <u>Obrero</u>, 151 Hawaiʻi at 480, 517 P.3d at 763 (quoting <u>Cox v. Cox</u>, 138 Hawaiʻi 476, 482, 382 P.3d 288, 294 (2016)). The supreme court did not, however, expressly declare HRPP Rules 5 and 7 invalid in all respects. <u>See</u> <u>id.</u> Moreover, our reference to HRPP Rules 5 and 7 is in the context of determining jurisdiction, not the violation of HRS § 801-1.

days after the district court's oral order of commitment (i) the district court shall sign its written order of commitment, (ii) the clerk shall enter the district court's written order, and (iii) <u>the clerk shall transmit to the circuit court all documents in the proceeding</u> . . . ." HRPP Rule 5(c)(7) (emphasis added and formatting altered).

Finally, HRPP Rule 7(h) addresses the court in which a charge is filed. HRPP Rule 7(h) first states that "[a]n indictment or information shall be filed in the circuit court." HRPP Rule 7(h)(1). HRPP Rule 7(h) then states that "[a] complaint may be filed in either the district or circuit court; provided that a complaint shall not be filed initially in the circuit court when it charges (i) a felony, and none of the 3 conditions set forth in Rule 7(b) of these rules has yet occurred," or "(ii) only an offense or offenses other than a felony."[5] HRPP Rule 7(h)(2) (formatting altered); <u>See</u> HRPP

---

[5] HRPP Rule 7(b) provides,

> A felony may be prosecuted by a complaint under any of the following 3 conditions:
>
> (1) if with respect to that felony the district judge has found probable cause at a preliminary hearing and has committed the defendant to answer in the circuit court pursuant to Rule 5(c) of these rules;
>
> (2) if, pursuant to 5(c)(2) of these rules, the defendant has waived in open court the right to a preliminary hearing; or
>
> (3) if, pursuant to 7(c) of these rules, the defendant has waived in open court the right to an indictment.

(Formatting altered.)

Rule 2 (providing that these rules "shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay").

In sum, nothing in HRS chapters 805 and 806, and HRPP Rules 5 and 7, require the State to refile a complaint in the circuit court after the district court committed the case to the circuit court upon a finding of probable cause.

### 2.  Analysis

Here, the State filed a complaint with seven felony counts in the district court.  According to the court minutes, the district court held a hearing and found probable cause as to those seven counts.[6]  After finding probable cause, the district court orally committed the case, and each count, to the circuit court.

That same day, the district court entered a "Committal to the Circuit Court" and "Amended Order and Notice of Entry of Order," committing Bautista's case to the circuit court for further proceedings and ordering Bautista to appear in the circuit court on August 12, 2020 at 8:00 a.m.  Also on that day, a circuit court case was initiated based on the district court's commitment with service made to the parties.[7]

---

[6]  Bautista did not order transcripts of this proceeding and did not file a notice indicating that he was ordering fewer than all transcripts. See HRAP Rule 10(b)(4).

[7]  The "Commitment to Circuit Court" docketed as No. 1 does not contain a readable pdf.

That charging instrument filed in the district court and committed to the circuit court alleged that Bautista violated HRS §§ 705-500(2) and 707-701.5, 707-710(1), 707-711(1)(a), 707-716(1)(e), 709-906(1) and/or (8), and 709-906(1) and/or (9), all of which are recognized offenses under Hawaiʻi law. That same complaint also alleged that the offenses occurred "in the Division of Wailuku, County of Maui, State of Hawaii," which is in the Second Circuit. HRS § 603-1 (2016) ("The second judicial circuit includes the islands of Maui, Molokai, Lanai, Kahoolawe, and Molokini.") Because the complaint charged Bautista with cognizable offenses within the second circuit, the requirements of HRS § 603-21.5(a)(1) were satisfied.

Bautista does not cite to, and we have not found, a statute or rule that requires the State to refile a complaint in the circuit court after the district court has committed the case to circuit court upon a finding of probable cause. Moreover, we decline to interpret Footnote 12 in Obrero as requiring as much because the complaint committed to the circuit court satisfied the requirements of HRS § 603-21.5(a)(1) to invoke the circuit court's jurisdiction. See 151 Hawaiʻi at 478 n.12, 517 P.3d at 761 n.12.

**B.    Complaint Presumed Valid**

Bautista next contends that the State violated HRS § 801-1 by failing to obtain an indictment, and that the "prosecution against [him] is unlawful and the judgment must be vacated."

HRS § 801-1 provides, "No person shall be subject to be tried and sentenced to be punished in any court, for an alleged offense, unless upon indictment or information, except for offenses within the jurisdiction of a district court or in summary proceedings for contempt."  As mentioned, the supreme court in Obrero held that the "State's prosecution of Obrero [was] unlawful because it [had] not complied with the statute's indictment requirement."  Obrero, 151 Hawaiʻi at 478, 517 P.3d at 761.

However, the supreme court noted that

> had Obrero challenged the State's failure to comply with HRS § 801-1 for the first time on appeal, we would presume the validity of the complaint against him and would not reverse his conviction absent a showing that the complaint prejudiced him or could not be construed to charge a crime.

151 Hawaiʻi at 478 n.11, 517 P.3d at 761 n.11 (citing Wheeler, 121 Hawaiʻi at 399, 219 P.3d at 1186).  In Wheeler, the supreme court explained that

> there is a 'presumption of validity,' . . . for charges challenged subsequent to a conviction.  In those circumstances, this court will 'not reverse a conviction based upon a defective indictment [or complaint] unless the defendant can show prejudice or that the indictment [or complaint] cannot within reason be construed to charge a crime.'

16

Wheeler, 121 Hawai'i at 399-400, 219 P.3d at 1186-87 (citations omitted, brackets in original).

Here, Bautista raised the State's violation of HRS § 801-1 for the first time on appeal in his supplemental brief. Thus, as the supreme court explained, we presume the complaint is valid. See generally, 151 Hawai'i at 478 n.11, 517 P.3d at 761 n.11. Bautista made no showing that the complaint prejudiced him. And, as discussed above, the complaint alleged recognizable offenses under Hawai'i law. Absent a showing of prejudice or that the charges could not be construed as a crime, we cannot vacate Bautista's judgment of conviction and sentence.

C. No Abuse Of Discretion In Consecutive Sentencing

Finally, Bautista contends that the circuit court "abused its discretion when it imposed consecutive terms of imprisonment." (Formatting altered.) Bautista argues that the "circuit court's justification is unsupported in the record and is not based on a rational and fair decision." Bautista asserts that the circuit court ignored Wife's pleas for leniency and "based its sentence on the speculative possibility that [Wife] could have died and that she had been strangled[,]" and in so doing, relied on an uncharged crime.

HRS § 706-606 (2014) delineates the factors the circuit court must consider in imposing a sentence:

> (1)   The nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)   The need for the sentence imposed:
>
>> (a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
>>
>> (b) To afford adequate deterrence to criminal conduct;
>>
>> (c) To protect the public from further crimes of the defendant; and
>>
>> (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)   The kinds of sentences available; and
>
> (4)   The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

(Formatting altered.)

"A sentencing judge generally has broad discretion in imposing a sentence." State v. Barrios, 139 Hawaiʻi 321, 328, 389 P.3d 916, 923 (2016) (citation omitted). "Further, '[t]he weight to be given the factors set forth in HRS § 706-606 in imposing sentence is a matter generally left to the discretion of the sentencing court, taking into consideration the circumstances of each case.'" Id. (citations omitted).

"[A] sentencing court is additionally required to explain on the record its reasoning based on the HRS § 706-606 factors to ensure that its 'decision to impose consecutive sentences was deliberate, rational, and fair.'" 139 Hawaiʻi at 335, 389 P.3d at 930 (quoting State v. Hussein, 122 Hawaiʻi 495, 510, 229 P.3d 313, 328 (2010)). However, "the sentencing court

is not required to articulate and explain its conclusions with respect to every factor listed in HRS § 706-606, but rather must articulate its reasoning only with respect to those factors it relies on in imposing consecutive sentences."  See Barrios, 139 Hawai'i at 336, 389 P.3d at 931 (cleaned up).

Here, the circuit court considered the nature and circumstances of the offense.  The circuit court stated that "there was no part of your wife's body that was not untouched."  The circuit court recognized that "the doctor at the hospital did confirm the extent of her injuries with the facial bruising, the collapsed lung, which could have caused death, [and] fracture to not one rib but three different ribs . . . ."

The circuit court noted concern for Bautista's six-year-old son, and further noted that it thought "the only reason you stopped was perhaps because your father was pounding on the front door . . . and this gave an opportunity for your wife to get out of the house with the six-year-old, your son . . . ."

The circuit court also considered the possible sentences available.  The circuit court explained that it "had an opportunity today to review the options of sentencing" and could possibly give probation or concurrent sentences.  The court confirmed that it heard the arguments and Bautista's statement, read the letters submitted by his family and Wife, and considered that Bautista had no previous record.

19

The circuit court then went on to consider the need for the sentence imposed. The circuit court stated that "this is a very severe case. . . . [Y]our adult daughter talks about how you folks would argue almost every night, and it was so bad that she didn't even want to live at home at one point." The circuit court explained that Wife "needs to be protected. Your son needs to be protected. The community needs to be protected from his kind of behavior."

Turning to Bautista's assertion that the circuit court relied on uncharged crimes of attempted murder and felony abuse by strangulation, we must consider the circuit court's statements in context. The circuit court stated, "[s]o these offenses are so serious you could have killed your wife. She had a collapsed lung, and you broke at least three of her ribs, not to mention all the bruising from head to toe." The circuit court also stated,

> [s]o if something so silly as accusing her of an affair can set you off to the point where you break her ribs, strangle her, and knock her to the ground, threaten to kill her -- I think she did say at one point, on a scale of one to ten, she rated her fear as a ten.

These statements reflect the seriousness of Bautista's conduct and the need "to protect the public," which are permissible considerations when imposing consecutive sentencing.

Based on the record before us, we cannot say that the circuit court's sentence was arbitrary or capricious, or that the circuit court refused to consider Bautista's contentions.

See Barrios, 139 Hawaiʻi at 328, 389 P.3d at 923.  Nor can we say that the circuit court "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice."  Id.

### IV. Conclusion

For the foregoing reasons, we affirm the circuit court's March 10, 2021 Judgment; Conviction and Sentence; Notice of Entry.

DATED:  Honolulu, Hawaiʻi, February 28, 2023.

| | |
|---|---|
| On the briefs: | /s/ Katherine G. Leonard<br>Presiding Judge |
| Benjamin E. Lowenthal,<br>Deputy Public Defender,<br>for Defendant-Appellant. | /s/ Clyde J. Wadsworth<br>Associate Judge |
| Gerald K. Enriques,<br>Deputy Prosecuting Attorney,<br>County of Maui,<br>for Plaintiff-Appellee. | /s/ Sonja M.P. McCullen<br>Associate Judge |