**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000458
28-JAN-2026
08:10 AM
Dkt. 71 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

**CAAP-24-0000458**

STATE OF HAWAIʻI, Plaintiff-Appellee,
v. BRANDY BLAS and THOMAS BLAS, SR., Defendants-Appellees,
and DEBRA GERON, Defendant-Appellant.

AND

**CAAP-24-0000667**

STATE OF HAWAIʻI, Plaintiff-Appellee,
v. BRANDY BLAS, Defendant-Appellant, and
THOMAS BLAS, SR. and DEBRA GERON, Defendants-Appellees.

AND

**CAAP-24-0000729**

STATE OF HAWAIʻI, Plaintiff-Appellee,
v. BRANDY BLAS and THOMAS BLAS, SR., Defendants-Appellees,
and DEBRA GERON, Defendant-Appellant
and DEPARTMENT OF CORRECTIONS & REHABILITATION,
Interested Party-Appellee.

AND

**CAAP-24-0000765**

STATE OF HAWAIʻI, Plaintiff-Appellee,
v. BRANDY BLAS, Defendant-Appellant,
and THOMAS BLAS, SR. and DEBRA GERON, Defendants-Appellees.
and DEPARTMENT OF CORRECTIONS & REHABILITATION,
Interested Party-Appellee.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-24-0000150)


JANUARY 28, 2026


NAKASONE, CHIEF JUDGE, HIRAOKA AND WADSWORTH, JJ.


OPINION OF THE COURT BY NAKASONE, CHIEF JUDGE


This consolidated appeal[1] involves challenges regarding bail and pretrial bail reports by detainees who are held without bail (**no-bail detainees**). Appellants appeal from the Circuit Court of the First Circuit's (**Circuit Court**)[2] orders denying bail and its subsequent order denying their motions for Oahu Intake Service Center (**OISC**) to prepare pretrial bail reports.

---

[1]     We consolidated these four bail-related appeals, CAAP-24-458, 24-667, 24-729, and 24-765, which all arise out of the same underlying criminal case. In that case, Debra Geron (**Geron**) and Brandy Blas (**Blas**) (collectively, **Appellants**) are co-defendants currently pending trial for the alleged abuse and subsequent 2024 death of G.B., a ten-year-old foster child in the custody of Blas and her husband, co-defendant Thomas Blas, Sr. Geron is Blas's mother who lived in the same household. Some of the charges involve another foster child, five-year-old A.B., who was also in Blas's custody during the relevant time period.

[2]     The Honorable Paul B.K. Wong presided.

While we affirm the Circuit Court's orders in this case, we clarify pursuant to State v. Carter, 154 Hawaiʻi 96, 546 P.3d 1210 (App. 2024), cert. denied, SCWC-23-0000444, 2024 WL 2786454 (Haw. May 30, 2024), that trial courts may not set bail for a no-bail detainee for the purpose of obtaining a pretrial bail report, as was suggested by Interested Party-Appellee State of Hawaiʻi Department of Corrections and Rehabilitation (**Department**)[3] and the OISC in this case.  We hold that the Intake Service Center (**ISC**) statute, Hawaii Revised Statutes (**HRS**) § 353-10(b),[4] unambiguously excludes a no-bail detainee from

---

[3]    The Department entered an appearance and opposed Appellants' motions for bail reports below and on appeal.

[4]    HRS § 353-10, entitled "Intake service centers," sets forth the duties of ISCs, which are established under the Department "in each of the counties to screen, evaluate, and classify the admission of persons to community correctional centers."  HRS § 353-10(a) (2015 & 2024 Supp.).  HRS § 353-10(b)(3) and (b)(9) require ISCs to conduct pretrial risk assessments and provide pretrial bail reports for "adult offenders," as follows:

>        (b) The [ISCs] shall:
>
>        (1) Provide orientation, guidance, and technical services;
>
>        (2) Provide social-medical-psychiatric-psychological diagnostic evaluation;
>
>        (3) Conduct internal pretrial risk assessments on adult offenders within three working days of admission to a community correctional center; provided that this paragraph shall not apply to persons subject to county or state detainers or holds, persons detained without bail, persons detained for probation violation, persons facing revocation of bail or supervised release, and persons who have had a pretrial risk assessment completed prior to admission to a community correctional center.  For purposes of this paragraph, "pretrial risk assessment" means an objective, research-based, validated assessment tool that measures an offender's risk of flight, risk of criminal conduct, and risk of violence or harm to any person or the general public while on pretrial release pending adjudication.  The pretrial risk assessment tool and procedures associated with its administration shall be

periodically reviewed and subject to further validation at least every five years to evaluate the effectiveness of the tool and the procedures associated with its administration. The findings of periodic reviews shall be publicly reported;

(4) Provide correctional prescription program planning and security classification;

(5) Provide other personal and correctional services as needed for both detained and committed persons;

(6) Monitor and record the progress of persons assigned to correctional facilities who undergo further treatment or who participate in prescribed correctional programs;

(7) Provide continuing supervision and control of persons ordered to be placed on pretrial supervision by the court and persons ordered by the director;

(8) Make inquiry with the offender concerning the offender's financial circumstances and include this information in the bail report; provided that the department of corrections and rehabilitation's pretrial services officers shall be provided limited access for the purpose of viewing other state agencies' relevant data related to an offender's employment wages and taxes;

(9) Provide pretrial bail reports to the courts on adult offenders, within three working days of admission of the offender to a community correctional center, that are ordered by the court or consented to by the offender.  A complete copy of the executed pretrial risk assessment delineating the scored items, the total score, any administrative scoring overrides applied, and written explanations for administrative scoring overrides, shall be included in the pretrial bail report.  The pretrial bail reports shall be confidential and shall not be deemed to be public records. . . .

(Emphases added.)  This opinion addresses only the underscored language at issue here in subsection (b)(3), pertaining to "persons detained without bail," whom we refer to as no-bail detainees.  We express no opinion as to the other categories of persons excluded in HRS § 353-10(b)(3).  Because pretrial detainees include persons who have not yet been convicted of an offense, in this opinion we use the term "detainee" instead of the term "offender," as used in the statute.

4

eligibility for a pretrial risk assessment and bail report completed on an *expedited* basis "within three working days" of the detainee's admission to a community correctional center. HRS § 353-10(b) is silent regarding *non-expedited* pretrial risk assessments and bail reports that are requested for any detainee after the three-day expedited period has passed. We conclude that the provision of a non-expedited pretrial bail report, even for a no-bail detainee, is consistent with the legislative intent of HRS § 353-10(b) to increase opportunities for bail review and for ISCs to fulfill their core responsibility to provide pretrial bail reports to the courts. Because HRS § 353-10(b) does not prohibit ISCs from providing a non-expedited pretrial bail report upon court request for any detainee, a trial court may thus request such a report for any detainee, even one held without bail.

### I.    INTRODUCTION

In CAAP-24-667, Blas appeals from the Circuit Court's October 7, 2024 "Order Denying Defendant's Motion for Supervised Release to [OISC] and/or Set Bail" (**Order Denying Blas Bail**).

In CAAP-24-458, Geron appeals from the Circuit Court's June 7, 2024 oral ruling regarding bail, and its December 4, 2024 "Findings of Fact, Conclusions of Law, and Order Denying Defendant Geron's Motion for Supervised Release or Bail Reduction with Conditions of Supervised Release" (**Order Denying Geron Bail**).[5]

In CAAP-24-765 (for Blas) and CAAP-24-729 (for Geron), Appellants appeal from the Circuit Court's October 12, 2024 "Order Denying Brandy Blas and Debra Geron's Motions for an

---

[5]    We construe Geron's timely filed Notice of Appeal from the June 7, 2024 oral ruling to include the December 4, 2024 Order Denying Geron Bail. Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 4(b)(4).

Order Instructing the [OISC] to Prepare and File a Pretrial Bail Report" (**Joint Order Denying Pretrial Bail Reports**).

Appellants raise the following points of error on appeal: **(1)** in the Order Denying Blas Bail, Blas challenges the Circuit Court's determinations regarding the flight risk presumption, serious risk of obstruction of justice, and serious risk of illegal activity under HRS § 804-3(b) and (c);[6] **(2)** in the Order Denying Geron Bail, Geron challenges the Circuit Court's determinations that Geron "did not rebut the presumption that she present[ed] a serious risk" of "illegal activity" and that Geron posed a serious risk of obstruction of justice based on a first-degree hindering prosecution charge; and **(3)** in the Joint Order Denying Pretrial Bail Reports, Appellants challenge the Circuit Court's conclusion "as a matter of law" that OISC

---

[6] HRS § 804-3 (2014 & 2023 Supp.), entitled "Bailable offenses," provides for the denial of bail for "serious crime[s]" where any of the "serious risk[s]" set forth in subsections (b)(1) to (b)(4) are present, and as relevant here, establishes a "rebuttable presumption" of a serious flight risk in subsection (c), as follows:

> (b) Any person charged with a criminal offense shall be bailable by sufficient sureties; provided that bail may be denied where the charge is for a serious crime, and:
>
>> (1) There is a serious risk that the person will flee;
>>
>> (2) There is a serious risk that the person will obstruct or attempt to obstruct justice, or therefore, injure, or intimidate, or attempt to thereafter, injure, or intimidate, a prospective witness or juror;
>>
>> (3) There is a serious risk that the person poses a danger to any person or the community; or
>>
>> (4) There is a serious risk that the person will engage in illegal activity.
>
> (c) Under subsection (b)(1) a rebuttable presumption arises that there is a serious risk that the person will flee or will not appear as directed by the court where the person is charged with a criminal offense punishable by imprisonment for life without possibility of parole. . . .

"was not required to prepare a pretrial bail report under [HRS] § 353-10[,]" and the denial of their motions requesting the reports.

## II.    BACKGROUND

Plaintiff-Appellee State of Hawaiʻi's (**State**) February 14, 2024 19-count grand jury Indictment charged Blas, Geron, and Blas's spouse with various felony and misdemeanor offenses, including second-degree murder against Blas and Geron, and sought enhanced sentencing, based on Appellants' "multiple offender" status if convicted, and due to the "especially heinous, atrocious, or cruel" nature of the alleged murder. Along with the Indictment, no-bail bench warrants were issued against Blas and Geron.

The Indictment charged Blas with ten counts, including second-degree murder in Count 1; kidnapping in Count 3; conspiracy to commit kidnapping in Count 5; first-degree unlawful imprisonment in Count 8; conspiracy to commit first-degree unlawful imprisonment in Count 10; first-degree endangering the welfare of a minor in Count 13; first-degree hindering prosecution in Count 15; second-degree endangering the welfare of a minor in Count 17; persistent nonsupport in Counts 18 and 19.

The Indictment charged Geron with six counts, including second-degree murder in Count 2; kidnapping in Count 4; conspiracy to commit kidnapping in Count 7; first-degree unlawful imprisonment in Counts 9 and 12; and first-degree hindering prosecution in Count 16.

### Blas's Motion to Set Bail

On March 22, 2024, Blas filed a "Motion for Supervised Release to [OISC] and/or Set Bail" (**Blas's Motion to Set Bail**). At the May 1, 2024 hearing on the motion, the parties stipulated

7

that Blas did not have a criminal record. Blas testified that she was born and raised on Oʻahu; was thirty-six years old; most of her family lived on Oʻahu; aside from a single trip as a child, she had no personal recollection of leaving Oʻahu; and she did not have a passport. The Circuit Court denied Blas's Motion to Set Bail, finding that Blas had been charged with "serious offenses" that qualified for denial of bail under HRS § 804-3(b), and applied the presumption that Blas posed a serious flight risk because she faced a penalty of life imprisonment without parole. The Circuit Court found that Blas's testimony did not rebut this rebuttable presumption under HRS § 804-3(c). Citing the grand jury's probable cause finding to charge Blas with Hindering in the First Degree and two counts of conspiracy, the Circuit Court also found Blas posed "a serious risk of obstruction" and "a serious risk" of "illegal activity" under HRS § 804-3(b). Blas timely appealed the October 7, 2024 Order Denying Blas Bail.

**Geron's Motion to Set Bail**

On May 22, 2024, Geron filed a "Motion for Supervised Release or Bail Reduction with Conditions of Supervised Release" (**Geron's Motion to Set Bail**).[7] At the June 7, 2024 hearing on the motion, Geron's husband, William M. Geron, Sr., testified that he and Geron had been married for forty-seven years; Geron had "[n]ever been in trouble with the law before"; Geron was afraid of flying and travelling by boat; and Geron possessed title to a residence in Oʻahu. Under HRS § 804-3(c), the Circuit Court found that although Geron had been charged with crimes serious enough to warrant punishment of life imprisonment

---

[7] Geron's counsel noted that he had incorrectly titled the motion, which should have read, "motion for supervised release or to set bail."

without parole, her husband's testimony rebutted the presumption that she presented a serious flight risk. Despite the rebutted flight risk, the Circuit Court nevertheless denied bail because Geron presented "a serious risk of obstructing . . . justice" under subsection (b)(2), and "a serious risk" of "illegal activity" under subsection (b)(4), because the grand jury found probable cause to charge Geron with Hindering in the First Degree and conspiracy. Geron timely appealed the June 7, 2024 oral ruling for the December 4, 2024 Order Denying Geron Bail.

### Appellants' Motions for Pretrial Bail Reports

Geron filed a September 27, 2024 "Motion for Order Instructing the [OISC] to Prepare and File a Pretrial Bail Report for Inmate Debra Geron," and Blas filed an October 2, 2024 "Motion for Order Instructing the [OISC] to Prepare and File a Pretrial Bail Report for Defendant Brandy Blas" (collectively, **Motions for Pretrial Bail Reports**). Geron's motion challenged the Circuit Court's Order Denying Geron Bail "without the benefit or detriment of an OISC bail report." Blas's motion challenged the Circuit Court's Order Denying Blas Bail "without the benefit of an OISC investigation and pretrial bail report." Both Appellants' motions referred to previously filed letters from OISC (**OISC letters**) in connection with Blas's March 22, 2024 Motion to Set Bail, and Geron's May 22, 2024 Motion to Set Bail, in which the OISC declined to submit pretrial bail reports under HRS § 353-10, due to Appellants' no-bail status.[8]

---

[8] The OISC letters for both Blas and Geron stated:

> Pursuant to HRS 353-0010, persons detained without bail are not eligible for a pretrial risk assessment.

> Should bail be set in this matter the OISC would submit a Pretrial Bail Report in response to this motion, however, due to the nature and severity of the instant offenses the

Appellants' Motions for Pretrial Bail Reports argued that ordering the OISC investigation and bail report pursuant to HRS § 353-10 "would allow an independent neutral third party to assess [Appellants'] pretrial risk assessment regarding risk of flight, risk of criminal conduct, and risk of violence or harm to any person or the general public" in the event Appellants were granted pretrial release. Geron also argued: "Geron's Catch 22 is that she cannot get a bail report because she is being held without bail," and in order to properly address issues surrounding the setting of bail, "she would need a bail report, which she cannot get because she is being held without bail."

At the October 7, 2024 hearing on the Motions for Pretrial Bail Reports, the Circuit Court orally denied both motions, and filed the October 12, 2024 Joint Order Denying Pretrial Bail Reports, which Appellants timely appealed.

### III. JURISDICTION

Before we turn to Appellants' points of error, we address the Department's challenge to this court's jurisdiction over Appellants' appeals in CAAP-24-729 and 24-765 from the Joint Order Denying Pretrial Bail Reports. The Department argues that this order does not fall within the collateral order exception to the final judgment requirement, and this court lacks jurisdiction. The Department claims that a pretrial bail report "does not ultimately decide whether a defendant is released on bail" and "does not involve an important right which would be irreparably lost if review had to await final

---

OISC would not support any form of release for the defendant.

10

judgment"; and that these appeals "do[] not resolve an issue completely collateral to the merits of this case."

"The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard." State v. Nakanelua, 134 Hawaiʻi 489, 501, 345 P.3d 155, 167 (2015) (citation omitted). A trial court's order or decision may be appealable even in the absence of final judgment under the collateral order exception, if it: "(1) fully disposes of the question at issue; (2) resolves an issue completely collateral to the merits of the case; and (3) involves important rights which would be irreparably lost if review had to await a final judgment." State v. Nicol, 140 Hawaiʻi 482, 486 n.7, 403 P.3d 259, 263 n.7 (2017) (citation omitted). Under this exception, a denial of a pretrial motion to reduce bail is appealable, even in the absence of a final judgment. State v. Johnson, 96 Hawaiʻi 462, 470 n.12, 32 P.3d 106, 114 n.12 (App. 2001).

Here, the "question at issue[,]" i.e., whether the Circuit Court should have ordered OISC to prepare pretrial bail reports for Blas and Geron, is one that can be "fully dispose[d] of" in this appeal even without a final judgment, and is "completely collateral" to the merits of the underlying criminal case. See Nicol, 140 Hawaiʻi at 486 n.7, 403 P.3d at 263 n.7 (citation omitted). The question at issue concerns the statutory eligibility of no-bail detainees for pretrial bail reports under HRS § 353-10 in connection with a bail hearing. The resolution of this question involves "important rights" of pretrial detainees under HRS § 353-10, which would be irreparably lost if review had to await a final judgment in the criminal case. See id. Accordingly, we conclude we have jurisdiction to review Appellants' appeals from the Joint Order Denying Pretrial Bail Reports.

11

### IV.   STANDARDS OF REVIEW

We apply an abuse of discretion standard of review to the Circuit Court's pretrial bail decisions.  See Carter, 154 Hawaiʻi at 101, 546 P.3d at 1215 (applying abuse of discretion standard of review to a trial court's decisions regarding release on bail and the amount of bail).

We review findings of fact (**FOFs**) under a "clearly erroneous standard," and conclusions of law (**COLs**) "de novo" under the right/wrong standard.  State v. Rodrigues, 145 Hawaiʻi 487, 494, 454 P.3d 428, 435 (2019) (citation omitted). "Additionally, a conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case."  Id. (citation and internal quotation marks omitted).

"The interpretation of a statute is reviewed de novo." Carter, 154 Hawaiʻi at 101, 546 P.3d at 1215 (citation omitted).

### V.   DISCUSSION

#### A. The Order Denying Blas Bail was within the Circuit Court's discretion.

Blas argues the Circuit Court erred by concluding that Blas did not rebut the presumption that she posed a serious flight risk, and that Blas presented serious risks of obstruction of justice and engaging in illegal activity, based solely on the charges in the Indictment.

In the Order Denying Blas Bail, the Circuit Court "took judicial notice of the records and files in this case" and ruled as follows:

> 1.  On February 14, 2024 [Blas] was indicted by an Oahu Grand Jury on ten (10) different criminal offenses.
>
> . . . .

4. The Court finds that pursuant to [HRS] Section 804-3, [Blas] is charged with a serious crime.

5. The Court also notes that the crimes are so serious that the indictment language allows for the imprisonment without the possibility of parole. Thus, there is a presumption that exists as to serious risk of flight.

6. The Court finds that [Blas] has not rebutted that issue.

7. In addition to being charged with serious offenses, and a risk of flight, the court must also note that there is a Hindering in the First Degree charge of which there is probable cause.

8. As such, because of that finding, there is a serious risk of obstruction by [Blas]. Additionally, given the conspiracy charges, there also exists a serious risk that [Blas] will engage in illegal activity.

. . . .

10. Therefore, the Court finds that [Blas] can and should be held without bail.

### 1. The application of the flight risk presumption was not clearly erroneous.

"[T]he bail denial determination under HRS § 804-3(b) involves a 'serious crime' determination and an analysis of the 'serious risk' posed by the defendant." Carter, 154 Hawaiʻi at 103, 546 P.3d at 1217. "Under HRS § 804-3(b), a person 'may be denied' bail for a 'serious crime' and if the trial court finds any of the 'serious risks' in (b)(1) through (b)(4) are present[.]" Id. at 102, 546 P.3d at 1216 (brackets omitted). HRS § 804-3(b)(1) sets forth one of the serious risks as "a serious risk that the person will flee[.]" HRS § 804-3(c) establishes a "rebuttable presumption" as to the subsection (b)(1) serious flight risk, "where the person is charged with a criminal offense punishable by imprisonment for life without possibility of parole."

13

Here, the Circuit Court found that the ten counts against Blas included "serious crime[s][,]" and the Indictment included a penalty of life imprisonment without the possibility of parole. After considering the evidence Blas presented at the hearing, the Circuit Court properly applied the serious flight risk presumption under HRS § 804-3(b)(1) and (c), and found that Blas "ha[d] not rebutted" the presumption that she was a serious flight risk. On this record, the Circuit Court did not clearly err in its mixed legal and factual determination that the presumption of serious flight risk was not rebutted. See Rodrigues, 145 Hawai'i at 494, 454 P.3d at 435.

### 2. The determinations of serious risk of obstruction and illegal activity were not clearly erroneous.

A trial court may deny bail where the defendant is charged with a serious crime under HRS § 804-3(a) and there is a serious risk under HRS § 804-3(b)(2) or (b)(4), that the defendant will obstruct justice or engage in illegal activity. Here, the Circuit Court found that Blas presented both a serious risk of obstruction and illegal activity, based on the probable cause determinations supporting the Indictment.

Blas argues that the "mere existence of conspiracy charges" and "mere indictment for Hindering in the First Degree" cannot establish the "serious risk" under HRS § 804-3(b), and that "[t]here must be fact-specific demonstrations of risk, not generalized suspicions arising from the indictment." Blas does not supply any legal authority for these arguments.

A grand jury indictment is not just a piece of paper, and does not rest on "mere" allegations or "generalized suspicions" as Blas contends. Hawai'i law requires an indictment to be based on probable cause. See Haw. Const. art. I, § 10; HRS §§ 801-1 and 806-7; Hawai'i Rules of Penal Procedure Rule 7.

14

"'Probable cause' has been defined as a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." State v. Taylor, 126 Hawaiʻi 205, 218, 269 P.3d 740, 753 (2011) (citation and internal quotation marks omitted). "[T]o support an indictment, the prosecution must provide evidence of each essential element of the charged offense to the grand jury." Id. (citation omitted). The Hawaiʻi Supreme Court has described the grand jury as a protective shield against unfounded charges and arbitrary action, noting that:

> [the grand jury] functions as a barrier to reckless or unfounded charges and serves as a shield against arbitrary or oppressive action, by ensuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance.

State v. Obrero, 151 Hawaiʻi 472, 482, 517 P.3d 755, 765 (2022) (citations modified). Appellants have pointed to no authority that precludes trial courts making bail decisions from considering the probable cause determinations of a grand jury, which has vetted the serious criminal accusations set forth in an indictment. See id.; Taylor, 126 Hawaiʻi at 218, 269 P.3d at 753.

Here, the Circuit Court specifically referenced the two conspiracy charges (Counts 5, 10) and hindering prosecution charge (Count 15) in the Indictment to determine that Blas presented serious risks of illegal activity and obstruction. The Indictment in Counts 5 and 10 alleged Blas conspired to commit kidnapping and first-degree unlawful imprisonment by concealing the existence of the conspiracy by delaying notification to police when she and her co-conspirators found the alleged victim unresponsive; providing false information to emergency workers about the alleged victim's condition and

circumstances; and deleting text messages between herself and co-conspirator Geron. The Indictment also alleged in Count 15 that Blas hindered the prosecution of Geron, by "suppressing, by an act of concealment, alteration, or destruction" physical evidence that may have aided in Geron's prosecution. The Circuit Court's reliance on the grand jury's probable cause determinations to deny bail for Blas under HRS § 804-3(b)(2) and (b)(4) was not wrong, and its "serious risk" determinations were not clearly erroneous. See Rodrigues, 145 Hawaiʻi at 494, 454 P.3d at 435.

Accordingly, we conclude the Order Denying Blas Bail was within the scope of the Circuit Court's discretion. See Carter, 154 Hawaiʻi at 101, 546 P.3d at 1215.

## B. The Order Denying Geron Bail was within the Circuit Court's discretion.

Geron argues that the Circuit Court erred by (1) concluding that Geron "did not rebut the presumption that she presents a serious risk of engaging in illegal activity[,]"[9] and (2) "determining that a charge of Hindering in the First Degree alone justified the finding of a serious risk of obstruction of justice."

The Circuit Court found that Geron posed a serious risk of obstruction under HRS § 804-3(b)(2) in COL 12 of its order, and serious risk of illegal activity under HRS § 804-3(b)(4) in COL 14, as follows:

> 12. Here, the Court finds and concludes that [Geron] does present a serious risk of obstructing or attempting to obstruct justice. The Oahu Grand Jury found probable cause that [Geron] engaged in the offense of Hindering

---

[9] Under HRS § 804-3(c), a rebuttable presumption that the defendant presents a serious risk of engaging in illegal activity arises if the defendant has a prior conviction for a serious crime involving violence, is already on bail on a felony charge involving violence, or is on probation or parole for a serious crime involving violence.

> Prosecution in the First Degree related to the investigation of this case. . . . There was no evidence presented at the hearing that [Geron] did not pose a serious risk of obstructing or attempting to obstruct justice. The Court adopts the probable cause finding by the Oahu Grand Jury as evidence that [Geron] poses a serious risk of obstructing or attempting to obstruct justice. <u>Cf.</u> <u>State v. Obrero</u>, 151 Hawai'i 472, 482, 517 P.3d 755, 765 (2022) (extolling the virtue of a grand jury as a barrier to "reckless and unfounded charges."). <u>The second risk factor of HRS §804-3(b) applies</u>.
>
> . . . .
>
> 14. Here, <u>the Court finds and concludes that [Geron] does present a serious risk that she will engage in illegal activity</u>. The Oahu Grand Jury found probable cause that [Geron] engaged in a conspiracy to commit Kidnapping and a conspiracy to commit Unlawful Imprisonment in the First Degree. The Oahu Grand Jury found probable cause that both conspiracies were committed with two other individuals, and that [Geron] engaged in overt acts to further the conspiracies. . . . There was no evidence presented at the hearing that [Geron] does not pose a serious risk of engaging in illegal activity. The Court adopts the probable cause finding by the Oahu Grand Jury as evidence that [Geron] poses a serious risk that she will engage in illegal activity. <u>Cf.</u> <u>State v. Obrero</u>, 151 Hawai'i 472, 482, 517 P.3d 755, 765 (2022) (extolling the virtue of a grand jury as a barrier to "reckless and unfounded charges."). <u>The fourth risk factor of HRS§ 804-3(b) applies</u>.

(Emphases added.)

Geron's first contention that Geron rebutted "the presumption that she presents a serious risk of engaging in illegal activity" lacks basis because the Circuit Court did not apply this presumption. This presumption under HRS § 804-3(c) involves a prior conviction for a crime of violence, or probation, parole, or bail status involving a crime of violence.

Geron's second challenge is to the Circuit Court's determination that she presented a serious risk of obstruction, and Geron also appears to challenge the serious risk of illegal activity determination. Regarding the latter determination, Geron argues that "[t]he mere existence of conspiracy charges

17

cannot independently satisfy the requirement to establish a 'serious risk' under HRS §804-3(b)(4)," and "[t]here must be fact-specific demonstrations of risk, not generalized suspicions arising from the indictment." Geron similarly challenges the serious risk of obstruction determination, arguing that "the mere indictment for Hindering in the First Degree, absent specific evidence of any action or attempt by Geron to obstruct justice" was insufficient, and that "[n]o substantial evidence" supported the Circuit Court's determination of serious risk of obstruction. Geron cites no legal authority to support these challenges to the Circuit Court's "serious risk" determinations.

Here, in COLs 12 and 14 set forth above, the Circuit Court specifically noted and considered the two conspiracy charges (Counts 7, 12) and hindering prosecution charge (Count 16) in the Indictment to determine that Geron presented serious risks of illegal activity and obstruction. The Indictment, in Counts 7, 12 and 16, contained detailed allegations against Geron identical to the allegations against Blas set forth <u>supra</u>. The Circuit Court's reliance on the grand jury's probable cause determinations to deny bail for Geron under HRS § 804-3(b)(2) and (b)(4) was not wrong, and its "serious risk" determinations were not clearly erroneous. <u>See</u> <u>Rodrigues</u>, 145 Hawai'i at 494, 454 P.3d at 435.

Accordingly, we conclude the Order Denying Geron Bail was within the scope of the Circuit Court's discretion. <u>See</u> <u>Carter</u>, 154 Hawai'i at 101, 546 P.3d at 1215.

### C. The Joint Order Denying Pretrial Bail Reports was within the Circuit Court's discretion.

The Circuit Court made the following findings (**Findings**) in its Joint Order Denying Pretrial Bail Reports explaining why it would not order pretrial bail reports in this case:

18

2. The Court agrees with counsel, that <u>if the court ordered the [OISC] to prepare the Pretrial Bail report it would</u>.

3. The court finds that the <u>[OISC] did not have to prepare a pretrial bail report for this case</u>.

4. The Court finds that <u>there were hearings that were conducted for [Blas] and [Geron] regarding eligibility for bail</u>. These were evidentiary hearings where witnesses were called, testified, and cross examined at length. During these hearings, the Court vetted all the circumstances before it to make its decision that Defendants [Blas] and [Geron] can and should be held without bail.

5. The Court finds that <u>a Pretrial Bail Report would not have any additional information that would have been relied on by the Court in crafting its decision</u>.

(Emphases added.)

Appellants contend the Circuit Court "erred as a matter of law in concluding that [OISC] was not required to prepare a pretrial bail report under [HRS] §353-10,"[10] and "abused its discretion" by denying the Motions for Pretrial Bail Reports. The Department counters that Appellants did not meet "the statutory requirements necessitating" a pretrial bail report under HRS § 353-10(b)(3) due to their no-bail status. The parties thus disagree as to whether, and under what circumstances, a no-bail detainee is eligible for a pretrial bail report under HRS § 353-10.

> ### 1. Under <u>Carter</u>, a trial court may not set bail for a no-bail detainee for the purpose of obtaining a pretrial bail report.

We first address the parties' conflicting arguments regarding the propriety of a trial court's setting of bail for the purpose of obtaining a pretrial bail report for a no-bail

---

[10] Appellants' characterization of this determination in Finding 3 is inaccurate. Finding 3 does not mention the statute. We address Finding 3 <u>infra</u>.

detainee, which was the method employed by the trial court in
Carter.

Appellants argue that "in contrast to the trial
court's procedure used to obtain a pretrial bail report in
*Carter*, [154 Hawaiʻi 96, 546 P.3d 1210], a circuit court has
jurisdiction to order a pretrial bail report and risk assessment
without the need for setting a bail amount."  The Department
responds that: "If the court wanted to consider bail and wanted
a pretrial bail report, the court could have set [a] bail amount
and then obtain a pretrial bail report to consider whether Blas
would be eligible and possibly reduce the bail amount."  The
Department's proffered solution is identical to OISC's position
below, see footnote 8 supra, that no pretrial bail report would
be prepared because "persons detained without bail are not
eligible for a pretrial risk assessment" under HRS § 353-10, but
that "OISC would submit a Pretrial Bail Report" for the bail
motion if bail was set.

The Department and OISC's suggestions that a trial
court should set bail for the purpose of obtaining a pretrial
bail report for a no-bail detainee run afoul of Carter.  154
Hawaiʻi at 104, 546 P.3d at 1218.  In Carter, the trial court
found that "no bail conditions could mitigate the non-appearance
and public safety risks posed by" the defendant but nevertheless
"set cash bail in the face of such risks" because it understood
that "persons detained without bail are not eligible for a
pretrial risk assessment."  Id. at 98-99, 104, 546 P.3d at 1212-
13, 1218.  We held that the trial court's setting of $3.3
million bail for an indigent defendant for the purpose of
obtaining a pretrial bail report constituted an abuse of
discretion.  Id. at 104, 546 P.3d at 1218.  We explained that as
applied to high-risk defendants like Carter, who was charged

20

with serious crimes and presented serious risks, the determination of bail/no-bail is a risk-based analysis pursuant to HRS § 804-3, which is distinct from the financial circumstances analysis used to determine a "reasonable" amount of bail under HRS § 804-9.  Id. at 101-03, 546 P.3d at 1215-17. Blas and Geron, like Carter, are on no-bail status because of the multiple serious risks the Circuit Court determined they presented.

In Carter, we clarified why the setting of bail for such high-risk, no-bail detainees for the purpose of obtaining a bail report contravened applicable statutes.  In this case, we explain that such an approach is also unnecessary because we conclude a trial court may order a pretrial bail report for a no-bail detainee after the first three days of the detainee's admission to the correctional center have passed.

> **2. While HRS § 353-10(b) unambiguously excludes no-bail detainees from eligibility for expedited pretrial risk assessments and pretrial bail reports, the statute's silence regarding non-expedited pretrial risk assessments and bail reports for any detainee creates an ambiguity.**

Appellants acknowledge that HRS § 353-10(b)(3)'s requirement that OISC conduct an expedited pretrial risk assessment "shall not apply to" certain categories of detainees, including "persons detained without bail," such as Appellants. Appellants argue, however, that "[t]here was nothing precluding or excluding the circuit court from ordering a pretrial risk assessment and pretrial bail report **at any time thereafter** or upon a motion for supervised release or the setting of bail." (Emphasis added.)

The Department disagrees, on grounds that: "[t]he statute clearly carves out an exception that a pretrial risk

assessment does not need to be completed if a person is being detained without bail[,]" and "even though [Appellants] w[ere] requesting a pretrial bail report rather than a pretrial risk assessment, the bail report should be denied because the bail report contains a complete copy of the risk assessment which does not need to be provided since [Appellants are] being detained without bail."

As explained below, we find persuasive Appellants' argument that after the initial expedited period has passed, "nothing" precludes the trial court "from ordering a pretrial risk assessment and pretrial bail report at any time thereafter."

We are guided by the following principles of statutory construction:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, where there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

Carter, 154 Hawaiʻi at 101, 546 P.3d at 1215 (citation omitted).

HRS § 353-10(b)(3) and (b)(9) address pretrial bail reports and pretrial risk assessments that are completed on an expedited basis. HRS § 353-10(b)(3)'s language that "this paragraph shall not apply to . . . persons detained without bail" unambiguously provides that certain categories of detainees, including the no-bail detainees at issue here, are excluded from the expedited pretrial risk assessment

requirement. Thus, ISCs are not required to conduct expedited pretrial risk assessments for no-bail detainees.

HRS § 353-10(b)(9) similarly provides that ISCs must provide expedited pretrial bail reports "to the courts" within three working days of the detainee's admission, and requires a "complete copy of the executed pretrial risk assessment" to "be included in the pretrial bail report." Reading both subsections (b)(3) and (b)(9) together, ISCs are thus not required to provide expedited pretrial bail reports to the courts for no-bail detainees, because no expedited pretrial risk assessments for mandatory inclusion in a pretrial bail report are conducted for such detainees. This means that no-bail detainees are ineligible for an expedited pretrial bail report. Therefore, under a plain reading of HRS § 353-10(b)(3) and (b)(9), no-bail detainees are unambiguously excluded from, and ineligible for, expedited pretrial risk assessments and pretrial bail reports.

HRS § 353-10(b) does not address pretrial risk assessments and pretrial bail reports that may be requested after the three-day expedited period has passed. The statute does not expressly permit or preclude non-expedited pretrial bail reports. Despite the statutory silence regarding non-expedited pretrial bail reports, the parties in this case do not dispute OISC's general practice of providing such reports.[11] Rather, Appellants and the Department specifically disagree on whether a no-bail detainee is eligible for any pretrial bail

_____

[11] In the instant case, OISC refused to submit pretrial bail reports for Appellants in letters filed on March 28, 2024 and May 30, 2024, more than three working days after Appellants were arrested on February 16, 2024. In those letters, sent during the non-expedited time frame, OISC's refusals to provide pretrial bail reports were based on Appellants' no-bail status, not because the expedited period had passed. OISC also offered to prepare bail reports if bail were set, which indicated that its refusal was not based on the expiration of the three-working-day expedited period, and that OISC was in agreement with the practice of providing non-expedited pretrial bail reports generally.

report under HRS § 353-10(b).  Appellants argue that the no-bail detainees' ineligibility for pretrial bail reports is based on timing, i.e., that the ineligibility is limited to the three-day expedited period only, and no-bail detainees are eligible thereafter.  On the other hand, the Department argues that no-bail detainees are permanently ineligible for pretrial bail reports based on their status as no-bail detainees.

The ISC statute's silence regarding non-expedited pretrial risk assessments and bail reports renders it ambiguous.  See Carter, 154 Hawaiʻi at 101, 546 P.3d at 1215.  "[C]ourts may resort to extrinsic aids in determining legislative intent[,]" and "[o]ne avenue is the use of legislative history as an interpretive tool."  Hilo Bay Marina, LLC v. State, 156 Hawaiʻi 478, 488, 575 P.3d 568, 578 (2025) (citation omitted).  We thus look to the legislative history of HRS § 353-10 to aid our interpretation.

> **3. The legislative history of HRS § 353-10 and related statutes reflects the legislature's intent to provide increased opportunities for bail review and its designation of ISCs' "core responsibility" as the preparation of pretrial bail reports.**

HRS § 353-10 has been amended numerous times since its original enactment in 1987.  The amendments material to the issues here, regarding ISCs' preparation of pretrial bail reports generally, and the ineligibility of no-bail detainees for expedited pretrial risk assessments and expedited pretrial bail reports, were made in 2012 Act 141, 2012 Act 139, 2013 Act 67, and 2019 Act 179.  We discuss each of these Acts below.

### 2012 Act 141 (effective July 1, 2012)

The 2012 legislature made two amendments to the ISC statute, set forth in Act 141 and Act 139.  The first one, Act 141, amended subsection (3) by removing "presentence

assessments" to focus ISCs on providing "pretrial assessments," and added a new section for ISCs' "pretrial supervision" of persons who were released, as follows:

> **§353-10  Reentry intake service centers**. . . .
>
> The centers shall:
>
> . . . .
>
> (3)  Provide pretrial assessments on adult offenders [~~for the courts and assist in the conduct of presentence assessments on adult offenders and the preparation of presentence reports when requested by the courts;~~] that are consented to by the defendant or that are ordered by the court;
>
> . . . .
>
> (11)  Provide continuing supervision and control of persons ordered to be placed on pretrial supervision by the court and persons ordered by the director."

2012 Haw. Sess. Laws Act 141, § 1 at 507-08 (strikethroughs, underscoring, and brackets in original).  The legislature indicated that:  "The purpose of this measure is to define how pre-trial bail assessments are initiated, and to provide statutory authority to the [Department] to supervise pre-trial persons ordered released from custody by the courts."  H. Stand. Comm. Rep. No. 603-12, in 2012 House Journal, at 1176.

As relevant here, this version of the statute did not exclude any categories of detainees from pretrial assessments; contained no expedited deadlines for the pretrial assessments; and did not reference pretrial bail reports at all.

**2012 Act 139 (effective January 1, 2013)**

The second amendment to the ISC statute the 2012 legislature made was set forth in Act 139, which added sections (a) and (b) to HRS § 353-10.  Section (3) became subsection (b)(3), which the legislature modified by specifying "internal

25

pretrial risk assessments," defining "pretrial risk assessment," adding expediting language for pretrial risk assessments, and excluding certain categories of detainees from expedited pretrial risk assessments, as follows:

> **§353-10  Reentry intake service centers.**  (a) There shall be within the department of public safety, a reentry intake service center for adults in each of the counties . . . .
>
> (b)    The centers shall:
>
> . . . .
>
> (3)    [Provide] Conduct internal pretrial risk assessments on adult offenders [for the courts and assist in the conduct of presentence assessments on adult offenders and the preparation of presentence reports when requested by the courts;] within three working days of admission to a community correctional center which shall then be provided to the court for its consideration; provided that this paragraph shall not apply to persons subject to county or state detainers, holds, or persons detained without bail, persons detained for probation violation, persons facing revocation of bail or supervised release, and persons who have had a pretrial risk assessment completed prior to admission to a community correctional center.  For purposes of this paragraph, "pretrial risk assessment" means an objective, research-based, validated assessment tool that measures a defendant's risk of flight and risk of criminal conduct while on pretrial release pending adjudication;
>
> . . . .

2012 Haw. Sess. Laws Act 139, § 3 at 500-01 (strikethroughs, underscoring, and brackets in original).

The policy rationale for imposing a three-working-day deadline was rooted in the legislature's finding that "Hawai‘i's pre-trial process is one of the longest in the nation[,]" taking "several months on average," in contrast to bail review occurring in "just days or a few weeks in other jurisdictions,"

26

resulting in "millions of dollars spent needlessly on a growing pretrial population[.]"  S. Stand. Comm. Rep. No. 2146, in 2012 Senate Journal, at 876.  As the legislature stated,

> [t]he pretrial [detainee] population has increased due to longer lengths of stay.  The purpose of this [amendment] is to require that an objective assessment be conducted within the first three working days of a person's commitment to a community correctional center to allow the courts to more quickly exercise discretion in determining whether to release a pre-trial offender.

2012 Haw. Sess. Laws Act 139, § 2 at 500 (emphasis added).  More generally, the legislature indicated that its intent was to, inter alia, "reduce costly inefficiencies" in the "pretrial process," promote "more effective public safety strategies[,]" and reduce the "pretrial population" by requiring expedited assessments for quicker bail review by the courts.  2012 Haw. Sess. Laws Act 139, §§ 1-2 at 500.

As relevant here, this amendment made expedited pretrial risk assessments a requirement, and at the same time, excluded no-bail detainees from this new requirement.  Id.

**2013 Act 67 (effective July 1, 2013)**

The 2013 legislature again amended HRS § 353-10 in Act 67 Section 1, adding a new subsection (b)(8),[12] requiring ISCs to provide pretrial bail reports, as follows:

> (b)   The centers shall:
>
> . . . .
>
> (3)   [~~[(A)] Provide pretrial assessments on adult offenders that are consented to by the defendant or that are ordered by the court; and~~ ~~[(B)]~~] Conduct internal pretrial risk assessments on adult offenders within three working days of admission to a community correctional center which shall then be provided to the court for its consideration;

---

[12]    Now subsection (b)(9).  Haw. Sess. Laws Act 179, § 13 at 581.

27

provided that this paragraph shall not apply to persons subject to county or state detainers, holds, or persons detained without bail, persons detained for probation violation, persons facing revocation of bail or supervised release, and persons who have had a pretrial risk assessment completed prior to admission to a community correctional center. For purposes of this [+]subparagraph[+], "pretrial risk assessment" means an objective, research-based, validated assessment tool that measures a defendant's risk of flight and risk of criminal conduct while on pretrial release pending adjudication;

. . . .

(8)     Provide pretrial bail reports to the courts on adult offenders that are consented to by the defendant or that are ordered by the court. The pretrial bail reports shall be confidential and shall not be deemed to be public records. A copy of a pretrial bail report shall be provided only:

(A) To the defendant or defendant's counsel;

(B) To the prosecuting attorney;

(C) To the department of public safety;

(D) To any psychiatrist, psychologist, or other treatment practitioner who is treating the defendant pursuant to a court order;

(E) Upon request, to the adult client services branch; and

(F) In accordance with applicable laws, persons, or entities doing research.

2013 Haw. Sess. Laws Act 67, § 1 at 124-25 (strikethroughs, underscoring, and brackets in original). The legislature indicated "[t]he purpose and intent of this measure" was to "[r]equire [ISC]s to provide pretrial bail reports to the courts on adult offenders that are consented to by the defendant or that are ordered by the court"; and to "[p]rovide statutory authority to the courts to treat information contained in the

28

pretrial bail reports as confidential[.]"  S. Stand. Comm. Rep. No. 338, in 2013 Senate Journal, at 1022.  Through various committee reports, the legislature emphasized that the ISCs' raison d'être, or "core responsibility," was to provide pretrial bail reports to enable courts to "receive detailed information, such as the defendant's medical, mental health, and substance abuse history, to assist with pretrial release decision-making." S. Stand. Comm. Rep. No. 338, in 2013 Senate Journal, at 1022; see also S. Stand. Comm. Rep. No. 536, in 2013 Senate Journal, at 1120 (identifying ISCs' "core responsibility in providing bail reports to the court"); H. Stand. Comm. Rep. No. 1195, in 2013 House Journal, at 1337 (clarifying ISCs' "core responsibility" as providing "pretrial bail reports . . . to the courts"); H. Stand. Comm. Rep. No. 1572, in 2013 House Journal, at 1458 (same).

As relevant here, the 2013 amendments reflected the legislature's designation of ISCs' "core responsibility" as the preparation of pretrial bail reports, but did not contain any expediting language for such pretrial bail reports or mandate the inclusion of a pretrial risk assessment in the pretrial bail report.

**2019 Act 179 (effective January 1, 2020)**

The 2019 legislature amended HRS § 353-10 to its current iteration,[13] by clarifying in subsections (b)(8) and (b)(9) that a pretrial bail report must include the pretrial risk assessment, as well as information regarding a detainee's "financial circumstances."  2019 Haw. Sess. Laws Act 179, § 13 at 581.  The 2019 Amendments made subsection (b)(9) (regarding pretrial bail reports) consistent with (b)(3) (regarding

---

[13]    HRS § 353-10 was amended again in 2022, but the changes were non-substantive.  2022 Haw. Sess. Laws Act 278, § 29 at 793.

pretrial risk assessments) by adding the expediting language for pretrial bail reports, as follows:

(b)  The centers shall:

.  .  .  .

(3)  Conduct internal pretrial risk assessments on adult offenders within three working days of admission to a community correctional center [which shall then be provided to the court for its consideration]; provided that this paragraph shall not apply to persons subject to county or state detainers[,] or holds, [or] persons detained without bail, persons detained for probation violation, persons facing revocation of bail or supervised release, and persons who have had a pretrial risk assessment completed prior to admission to a community correctional center.  For purposes of this [+]paragraph[+], "pretrial risk assessment" means an objective, research-based, validated assessment tool that measures [a defendant's] an offender's risk of flight, [and] risk of criminal conduct, and risk of violence or harm to any person or the general public while on pretrial release pending adjudication[+].  .  .  .

.  .  .  .

(8)  Make inquiry with the offender concerning the offender's financial circumstances and include this information in the bail report; provided that the department of public safety's pretrial services officers shall be provided limited access for the purpose of viewing other state agencies' relevant data related to an offender's employment wages and taxes;

[(8)] (9) Provide pretrial bail reports to the courts on adult offenders, within three working days of admission of the offender to a community correctional center, that are [consented to by the defendant or that are] ordered by the court[.] or consented to by the offender.  A complete copy of the executed pretrial risk assessment delineating the scored items, the total score, any administrative scoring overrides applied, and written explanations for administrative scoring overrides, shall be included in the pretrial bail report.  The pretrial bail reports shall be confidential and shall not be deemed to be public records. . . .

Id. at 580-81 (strikethroughs, underscoring, and brackets in original).

The 2019 amendments were in response to a 2018 Hawaiʻi State Judiciary Criminal Pretrial Task Force report that recommended "legislation and revisions to criminal pretrial practices and procedures to increase public safety while maximizing pretrial release of those who do not pose a danger or a flight risk[.]"  2019 Haw. Sess. Laws Act 179, § 11 at 579; Hawaiʻi State Judiciary, Hawaiʻi Criminal Pretrial Reform: Recommendations of the Criminal Pretrial Task Force to the Thirtieth Legislature of the State of Hawaiʻi (2018).  The legislature's purpose for these amendments to HRS § 353-10 was "to improve clarity and consistency in the criminal pretrial system" by requiring ISCs to "[c]onduct pretrial risk assessments and prepare bail reports within three working days of the offender's admission"; "[i]nquire and report on the offender's financial circumstances"; and "[i]nclude the fully executed pretrial risk assessment as part of the bail report[.]" 2019 Haw. Sess. Laws Act 179, § 12 at 580.

Two additional related statutes, establishing an expedited bail hearing and mandating periodic bail reviews, were also enacted in Act 179, reflecting the legislature's intent to provide increased opportunities for bail review.  See HRS § 1-16 (2009) (providing that "[l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other" and that "[w]hat is clear in one statute may be called in aid to explain what is doubtful in another").  The first related statute, HRS § 804-7.5, established a new statutory right to a "prompt" bail hearing, defining "prompt hearing" as one "that occurs at the time of the defendant's arraignment, or as soon as

31

practicable."[14]  2019 Haw. Sess. Laws Act 179, § 15 at 582.  The second related statute, HRS § 353-6.2, set forth a new mandate for community correctional centers to conduct "periodic reviews of pretrial detainees" (**periodic bail review**) at least once "every three months" to "reassess" a detainee's bail status by reviewing "whether new information or a change in circumstances" warranted reconsideration of such status; to transmit the periodic bail review report to the court and counsels; and for a court hearing to be conducted on any motion to modify bail filed pursuant to a periodic bail review report.[15]  2019 Haw. Sess.

---

[14]    HRS § 804-7.5(b) (2014 & 2024 Supp.), entitled "Right to a prompt hearing; release or detention," provides for a prompt bail hearing, as follows:

> (b)  Upon formal charge and detention, a defendant shall have the right to a prompt hearing concerning:
>
>     (1)  Release or detention; and
>
>     (2)  Whether any condition or combination of conditions will reasonably ensure:
>
>         (A)  The defendant's appearance as required; and
>
>         (B)  The safety of any other person and the community.
>
> (c)  At the hearing, the defendant shall have the right to be represented by counsel . . . . The defendant shall be afforded an opportunity to testify at the hearing.  The defendant and the prosecution shall both be afforded an opportunity to present information by proffer or otherwise.
>
> (d)  The rules concerning the admissibility of evidence in criminal trials shall not apply to the presentation and consideration of information at the hearing.
>
> (e)  The defendant may be detained pending completion of the hearing.

[15]    HRS § 353-6.2 (2015 & 2024 Supp.), entitled "Community correctional centers; periodic reviews of pretrial detainees," provides:

> (a)  The relevant community correctional centers, on a periodic basis but no less frequently than every three months, shall conduct reviews of pretrial detainees to reassess whether a detainee should remain in custody or whether new information or a change in circumstances

Laws Act 179, § 22 at 585.  The legislature's purpose for mandatory periodic bail reviews was "to afford pretrial detainees greater and continuing opportunities to be released" by requiring "regular reviews . . . to identify pretrial defendants who may be appropriate for pretrial release or supervision[,]" and "[p]roviding the results of these reviews to the courts who may then consider modifying the previously issued bail order."  2019 Haw. Sess. Laws Act 179, § 21 at 585.  The legislature indicated the 2019 amendments were enacted to "[s]upport best practices for an effective correctional system" and to "[i]mplement certain recommendations" of the Criminal Pretrial Task Force.  Conf. Comm. Rep. No. 149, in 2019 Senate Journal, at 883, 2019 House Journal, at 1609.

The legislative history of HRS § 353-10(b) set forth above reflects the legislature's desire to facilitate the efficient and safe reduction of the pretrial detainee population and ease the chronic overcrowding in community correctional centers.  The legislature designated the preparation of pretrial bail reports as the ISCs' "core responsibility," which would aid the courts in their bail review.  See, e.g., S. Stand. Comm. Rep. No. 338, in 2013 Senate Journal, at 1022.

> **4. HRS § 353-10(b) does not prohibit ISCs from conducting non-expedited pretrial risk assessments and providing non-expedited**

---

warrants reconsideration of a detainee's pretrial release or supervision.

(b) For each review conducted pursuant to subsection (a), the relevant community correctional center shall transmit its findings and recommendations by correspondence or electronically to the appropriate court, prosecuting attorney, and defense counsel.

(c) If a motion to modify bail is filed pursuant to a recommendation made pursuant to subsection (b), a hearing shall be scheduled at which the court shall consider the motion.

> **pretrial bail reports to the courts for any detainee, even one held without bail, upon court request.**

The legislature intended to support increased opportunities for bail review -- at the beginning of a detainee's admission to a community center, by requiring expedited pretrial bail reports that would be prepared in time for the prompt bail hearing under HRS §§ 353-10(b) and 804-7.5 -- and continuing throughout a detainee's stay at the center, by mandatory periodic bail reviews for each pretrial detainee at least once every three months, with transmission of those reports to the trial court and counsels under HRS § 353-6.2. When reading HRS § 353-10(b) together with the periodic bail review mandated by HRS § 353-6.2 (requiring county correctional centers to conduct three-month reviews of all pretrial detainees without an exception for no-bail detainees), the ISC statute does not prohibit an ISC from conducting a non-expedited pretrial risk assessment or from preparing a non-expedited pretrial bail report upon court request, even for a no-bail detainee. See HRS § 1-16.

To read HRS § 353-10(b) as disallowing non-expedited pretrial risk assessments and pretrial bail reports, where such specific prohibitory language is not found in the statute, would contravene the legislature's intent. We must avoid statutory interpretation that is "inconsistent, contradictory, and illogical." Moranz v. Harbor Mall, LLC, 150 Hawaiʻi 387, 398, 502 P.3d 488, 499 (2022) (citation modified). A pretrial detainee's personal circumstances, whether familial, financial, or legal, may change during their detention awaiting trial. New information pertinent to their bail status may arise. Such new information or changed circumstances warrant informed bail review, aided by a pretrial bail report provided by the ISC.

The ISC's provision of a non-expedited pretrial bail report, even for a no-bail detainee, is consistent with the legislature's intent to provide increased opportunities for bail review and for the ISC to fulfill its core responsibility of providing pretrial bail reports to the courts. Accordingly, we conclude that a trial court may request a non-expedited pretrial bail report for any detainee, even one held without bail.

> 5. **The Circuit Court's decision to not order pretrial bail reports under the circumstances of this case was within the scope of its discretion.**

Finally, we address Appellants' challenges to Finding 3, in which the Circuit Court stated that OISC "did not have to prepare a pretrial bail report for this case[,]" and their contention that OISC was required, even without a court order, to automatically prepare a pretrial bail report "upon the filing of a bail motion."

Appellants' argument that OISC is required to automatically prepare a pretrial bail report whenever a bail motion is filed "regardless of a court order[,]" is not supported by Carter, the sole legal authority upon which Appellants rely. Under HRS § 353-10, only expedited pretrial bail reports are automatically prepared by ISCs regardless of whether a motion is filed. We have already explained supra, that trial courts may request non-expedited pretrial bail reports to aid in their bail review, even for no-bail detainees.

Here, Finding 3 (that OISC "did not have to prepare a pretrial bail report") must be viewed in context with Finding 2 preceding it, and Findings 4 and 5 that follow it. The Circuit Court acknowledged in Finding 2 that while it possessed the authority to order OISC to prepare pretrial bail reports, the Circuit Court declined to do so in Finding 3, finding that OISC

"did not have to prepare a pretrial bail report for this case." The Circuit Court then explained in Findings 4 and 5 why it elected not to order pretrial bail reports, citing the prior evidentiary bail hearings it had already conducted, during which the court "vetted all the circumstances" and "witnesses were called, testified, and cross examined at length." See Finding 4. Appellants' Motions for Pretrial Bail Reports did not present new information regarding their personal, familial, financial, or legal circumstances warranting another bail review, for which a non-expedited pretrial bail report would be useful. Under these specific circumstances, we conclude the Circuit Court's factual determination in Finding 5, that "a Pretrial Bail Report would not have any additional information that would have been relied on by the Court in crafting its decision" to deny bail, was not clearly erroneous. See Rodrigues, 145 Hawaiʻi at 494, 454 P.3d at 435.

Accordingly, we conclude the Joint Order Denying Pretrial Bail Reports was within the scope of the Circuit Court's discretion. See Carter, 154 Hawaiʻi at 101, 546 P.3d at 1215.

## VI. CONCLUSION

For the foregoing reasons, we affirm the October 7, 2024 Order Denying Blas Bail; the December 4, 2024 Order Denying Geron Bail; and the October 12, 2024 Joint Order Denying Pretrial Bail Reports, all filed by the Circuit Court of the First Circuit.

On the briefs:

Walter J. Rodby,
for Defendant-Appellant
Debra Geron
in CAAP-24-458 and CAAP-24-729

Harrison L. Kiehm,
for Defendant-Appellant
Brandy Blas
in CAAP-24-667 and CAAP-24-765

Loren J. Thomas,
Deputy Prosecuting Attorney,
City and County of Honolulu
for Plaintiff-Appellee
State of Hawaiʻi
in CAAP-24-458 and CAAP-24-667

Brenton A. Inouye,
Deputy Attorney General
for Interested Party-Appellee
State of Hawaiʻi Department of
Corrections & Rehabilitation
in CAAP-24-729 and CAAP-24-765

/s/ Karen T. Nakasone
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge